DOMENGEAUX, Judge.
Catherine Maria Trahan and Gene Alvie Trahan commenced these proceedings to traverse the inventory of the estate of the late Elma Boudoin Theriot. The inventory of the Theriot Estate, prepared on September 15, 1986, by J. Berton Daigle, Notary Public, included, among other items, the following:
(1) Certificate of Deposit No. 410-0340-8 on deposit in Cameron State Bank standing in the name of Elma Theriot or Charamaine Leona Trahan with a balance on 5/6/86 of $13,635.89.
VALUED AND APPRAISED AT.$ 13,635.89
(2) Certificate of Deposit No. 41-0341-6 on deposit in Cameron State Bank standing in the name of Elma Theriot or Shawn Leon Trahan with a balance on 5/6/86 of $13,635.89.
VALUED AND APPRAISED AT.$ 13,635.89
(3) Certificate of Deposit No. 41-0342-4 on deposit in Cameron State Bank standing in the name of Elma Theriot or Catherine Trahan with a balance on 5/6/86 of $13,635.89.
VALUED AND APPRAISED AT.$ 13,635.89
(4) Certificate of Deposit No. 41-0659-8 on deposit in Cameron State Bank standing in the name of Elma B. Theriot or Catherine Trahan with a balance on 5/6/86 of $100,000.00.
VALUED AND APPRAISED AT.$100,000.00
The Trahans suggested to the Court in their motion to traverse that the above described Certificates of Deposit should not have been included in the decedent’s estate and they prayed for judgment declaring them the lawful owners.
The issues were narrowed subsequent to the Trahans’ motion and the only items of inventory before the Court at the hearing were the Certificates of Deposit issued in the names of Elma Theriot or Catherine Trahan and respectively numbered 41-0342-4 and 41-0659-8. The Trial Judge phrased the issues at the hearing as: (1) Did Elma Theriot intend to transfer the Certificates of Deposit to Catherine Tra-han? and (2) If she did intend the transfer, was it effective to convey ownership?
The Trial Court rendered judgment in favor of Catherine Trahan, individually, and against Larry Pete Boudoin and Douglas M. Haynie, the co-administrators of the Succession of Elma Boudoin Theriot. The Trial Judge concluded that by naming Catherine Trahan as an alternate payee on the certificates, Theriot intended to make a remunerative donation. The Trial Judge, subsequent to a review of the Civil Code articles addressing donations, La.Civ.Code arts. 1467, Et seq., held that Theriot’s donation was valid as a remunerative donation because remunerative donations do not require formal acts. Gene Trahan, although also a plaintiff, was not named in the judgment apparently because the Certificates at issue only named Catherine Trahan as an alternate payee.
Boudoin and Haynie, the co-administrators, sought this review and have assigned two errors. The administrators contend that the Trial Court erred in the following respects:
(1) The Trial Court erred in permitting the testimony of Catherine Trahan, without more, to establish a debt of *262 the decedent contrary to the dictates of La.R.S. 13:3722 (1950) (amended 1960) which specifies that a debt of a decedent be proven by the testimony of at least one credible witness, other than the alleged claimant, and other corroborating circumstances; and
(2) The Trial Court erred when it concluded that once Trahan had established that valuable services had been rendered pursuant to an agreement with Theriot the burden of proving that the value of the “donations” exceeded the value of the services by one-half, thereby mandating the necessity of a formal act of donation, shifted to the co-administrators, the parties challenging the alleged remunerative donations.
Catherine Trahan and her family, although neither related to Elma Theriot by blood nor marriage, were very close to the decedent and her husband. Trahan’s husband, Gene, was the godson of Enes G. Theriot, who had predeceased Elma, and Gene’s mother and Enes had been raised as brother and sister. Subsequent to the death of Gene’s mother, when Gene was a young child, the Theriots periodically cared for Gene establishing the bonds of kinship which endured until the Theriots passing.
Gene Trahan worked as a drilling consultant which required that he and his family live in numerous locations throughout the world. The Trahans, in 1978, lived in Singapore, Catherine’s native country, while Gene worked in the Philippines. While residing in Singapore, the Trahans received word that the Theriots wanted to speak with them. When Gene telephoned the Theriots he learned that Enes had experienced a stroke, that he was partially paralyzed and that the Theriots wanted his family to move in with them so they might care for them in their senior years. Catherine and Gene left Singapore in September of 1978 and moved in with the Theriots in the Theriots' home in Cameron Parish, Louisiana.
The testimony of the Trahans and their witnesses established that upon the Tra-hans’ return to the United States they, along with their only son at the time, resided with the Theriots in the Theriots’ modest but comfortable two-bedroom home. The Trahans contemplated purchasing their own home subsequent to their return to Louisiana primarily because they had two more children, but decided against any such purchase at the request of the Theri-ots. Catherine Trahan, the evidence indicates, assisted the decedent with the household chores, worked in the family vegetable garden and helped care for Enes until his death in May of 1980. Gene Trahan periodically worked as a drilling consultant, but devoted the majority of his time to managing the Theriots’ forty to fifty head of cattle and the Theriots’ forty acres of land. Although the record does not suggest that Enes and Elma did no work on the farm, it does reflect that because of their age and their health the Theriots depended greatly upon the Trahans.
During the Trahans’ years with the Ther-iots, the record suggests that they lived as one extended family. The Theriots did not charge the Trahans rent and they also assumed responsibility for all of the utility bills with the single exception of the telephone which Gene used occasionally for business. The record also reveals, however, that neither Catherine nor Gene received any compensation for their services. The food the two families ate was, for the most part, grown or raised on the farm. The Trahans’ relationship with the Theriots ended with the passing of Elma in May of 1986, approximately eight years after the Trahans moved from Singapore and six years after Enes’ death.
The initial issue on appeal addresses the propriety of permitting Catherine Trahan to establish her case solely upon her testimony without any other corroborating witnesses or evidence. The appellants question the actions of the Trial Judge suggesting that the Court erred in failing to apply La.R.S. 13:3721 (1950) (amended 1960) and R.S. 13:3722, supra, Louisiana’s “Dead Man’s Statute”. R.S. 13:3721 provides:
Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representa *263 tive, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:
(1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;
(2) The debt or liability is acknowledged by the succession representative as provided in Article 3242 of the Code of Civil Procedure, or by his placing it on a tableau of distribution, or petitioning for authority to pay it;
(3) The claimant has opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question; or
(4) The claimant has submitted to the succession representative a formal proof of his claim against the succession, as provided in Article 3245 of the Code of Civil Procedure.
The provisions of this section cannot be waived impliedly through the failure of a litigant to object to the admission of evidence which is inadmissible thereunder.
R.S. 13:3722 provides:
When parol evidence is admissible under the provisions of R.S. 13:3721 the debt or liability of the deceased must be proved by the testimony of at least one credible witness other than the claimant, and other corroborating circumstances. (Emphasis added.).
We have reviewed R.S. 13:3721 and 3722 and conclude that the Trial Court did not err.
Louisiana’s Dead-Man Statute was not intended and does not apply to the instant situation. The comments to R.S. 13:3721 state that the statute was intended to address the efforts of alleged creditors attempting to enforce their claims subsequent to the death of the debtor and that it was also intended to implement La.Code Civ.Proc. arts. 3242, 3244 (1960) and 3245 (1960) (Amended 1987) pertaining to the enforcement of claims against a succession. Catherine Trahan is not seeking to enforce a claim against the Succession of Elma Theriot, nor has she alleged that she is a creditor of the Theriot Estate. Trahan’s suit seeks judgment declaring her the owner of property which she alleges is her property and which she alleges was incorrectly included in the inventory of the Tra-han estate.
We must further note that the appellants’ suggestion that Catherine Trahan proved her case solely by her own testimony is totally inaccurate. Testifying on behalf of Trahan, in addition to her husband, were five other witnesses, each of whom was familiar with Trahan’s relationship with the Theriots and each of whom was familiar with the services and assistance she provided Elma.
Della Nunez, a frequent visitor to the Theriot household testified that on the occasion of one of Catherine’s trips to Singapore to see her family, Elma, because of her reliance on Catherine, said that if Catherine returned she was going to “fix her up financially.” Nunez stated that Theriot repeated that remark on four separate occasions and that on one occasion she added that she intended to make it so that no one but Catherine could obtain the money. Mervyn Taylor, another of the plaintiff’s witnesses, told the Court that Elma Theriot considered Catherine to be an “adopted daughter”.
The appellants maintain in their second assignment of error that the Trial Judge incorrectly burdened them with proving the extent and value of the services rendered by Catherine Trahan. The co-administrators contend that the Trial Judge erred when, relying upon Maleig v. Maleig, 435 So.2d 496 (La.App. 4th Cir.1983), writ denied, 441 So.2d 765 (La.1983), he held that “the burden of proving whether or not the value test has been met is shifted to the party attacking the donation.” We have reviewed La.Civ.Code arts. 1525 (1870) and 1526 (1870), addressing remunerative donations and the interpretative jurisprudence, and we do not believe the Trial Court erred.
*264 The value test referred to by the Trial Judge derives from article 1526 which provides, in part:
The rules peculiar to donations inter vi-vos do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the services.
Catherine Trahan proved: (1) that services were rendered; (2) that the services were valuable and appreciable in money; (3) the extent of the services rendered; and (4) the value of the services. The co-administrators did not call any witnesses nor did they bring forth evidence of any other form to refute the plaintiffs case. The appellants, therefore, have failed to establish that the value of the Certificates of Deposit exceeded the value of Trahan’s services by one-half.
Our review of the record reveals that Trahan’s services were not eclipsed in value by the value of the Certificates of Deposit. ■ The Certificates, on the dates they were “donated” were worth $110,000.00, $100,000.00 and $10,000.00, respectively. The only evidence addressing the value of Trahan’s services was the testimony of Trahan herself, and that of Roberta Vison. Trahan valued her services at $50.00 a day. Vison testified that she had performed similar work for four or five years prior to 1982 or 1983 and that she was paid $40.00 a day. Vison noted, however, that she only worked eight hours a day as opposed to Trahan who lived with the Theriots and assisted them as their needs arose. Tra-han’s services, without taking into consideration any time during which she may not have been at the Theriot home, which the evidence suggests was minimal, and valued from October 1, 1978, to January 6, 1985, were worth at $40.00 a day, $90,320.00, and at $50.00 a day, $112,900.00. Our calculations take into consideration the following:
(1) By January 7,1985 both of the Certificates of Deposit in question had been executed naming Catherine Trahan as an alternate payee;
(2) We declined to consider the services rendered after January 7, 1985, because the donations would more appropriately be considered onerous, donations subject to a charge, rather than remunerative, donations for past services; and
(3)We declined to consider the rental value of the home enjoyed by the Trahans and the utilities paid for by the Theriots because, relying on prior jurisprudence, these benefits were inconsequential in light of the totality of Trahan's services. See, Sauce v. Williams, 434 So.2d 613 (La.App. 3rd Cir.1983).
The sums allegedly given Trahan’s children, of which the evidence is speculative, is not relevant because it was not given to Catherine Trahan. The money given to Catherine Trahan, which the evidence indicates was minimal, appears to have been in the form of gifts and, therefore, has also not been given great consideration.
For the above and foregoing reasons, the judgment of the District Court is affirmed.
All costs of this appeal are assessed against Larry Pete Boudoin and Douglas M. Haynie, in their capacity as representatives of the Succession of Elma Boudoin Theriot.
AFFIRMED.