1 YELVERTON, Judge.
The issue in this case is the ownership of two certificates of deposit and a N.O.W. account. The accounts were in Jonesville Bank & Trust Company, and were payable to Julius C. Lawrence or Henry D. Jones, Jr. After Julius Lawrence died in January 1993, Jonesville Bank & Trust Company deposited the three bank accounts, totalling $175,-061.64, into the registry of court, and provoked a concursus naming Jones as a defendant, as well as the deceased’s legal heirs, consisting of his brother Jack, two sisters, and three children of a deceased sister. In a separate proceeding, a succession was opened. Lawrence had no forced heirs but he left collateral heirs. The brother, Jack, was appointed administrator. A purported will, leaving “my property” to Henry D. Jones, Jr., deceased’s nephew, was placed in the succession record. The validity of the will was put at issue.
The succession issue and the concursus were consolidated and tried. The issue in the succession was the validity of the purported will. The issue in the concursus was the ownership ofjjthe money that had been in the accounts in the bank. The trial judge ruled that the will was invalid, and that this was therefore an intestate succession. In the concursus, the trial judge ruled that Henry D. Jones, Jr. had established his ownership of the funds by virtue of remunerative and onerous donations. Only the judgment declaring Jones the owner by virtue of remunerative and onerous donations is appealed. We affirm.
We give our reasons for judgment in the captioned case. A separate judgment is this date being handed down in Jonesville Bank & Trust Company v. Henry D. Jones, 650 *399 So.2d 401 (La.App. 3rd Cir.1995) (Our Docket No. 94-978). Our reasons for judgment follow.
To begin with, Lawrence wanted his nephew Jones to have his money. That much is certain. He manifested that wish many times throughout his life. The first time that he overtly declared that intention was in 1978, fifteen years before his death, when he went to the bank and gave instructions to make his nephew an alternate payee on all three accounts. The accounts were never drawn on. The interest and the accounts were allowed to roll over regularly. In 1991 he manifested that wish again by going to a notary public and getting his signature notarized on a piece of paper that contained some typing and some blank spaces filled in with his handwriting. In this document he indicated simply and without elaboration that he wanted his nephew to have his property. This instrument was not a last will and testament. It sorely lacked the required formalities. Its testamentary language had been typed in by someone else. It demonstrated two things, that at that moment, in 1990, he wanted his nephew to have his money, and that he had no understanding of the legal requirements of how to go about doing it. So, two overt acts, one in 1978 and another in 1990, stand out as evidence that Lawrence wanted Jones to have his money.
It is just as certain, from the evidence, that the gift was not a pure gratuity. Lawrence lived on a small farm in Grant Parish. He never married or had any children or adopted anyone. He and his nephew Henry Jones were always close. Lawrence was a solitary individual. His closest companion was his nephew Jones. All his life Jones and his uncle lived in homes about 50 yards apart in Georgetown, Louisiana. From the time Jones was in his early teens until his uncle’s death in 1993, he helped his uncle around the place. This service and assistance covered a period of 35 years. It was interrupted only once for a two year period while Jones was away in military service. |3When Jones was a young man Lawrence had one hundred head of cattle and Jones spent most of his time with his uncle helping with the cattle. After Lawrence sold his cattle in 1975, Jones continued to serve and assist his uncle by maintaining his land, his home, and his vehicles. It was in October 1978 that Lawrence made the changes in his bank accounts to name Jones as a payee. There was testimony that from then on, as his health worsened toward the end of his life, Lawrence depended on Jones increasingly for everything that required physical labor. By this time Jones was himself married and had children of his own. Jones went by the nickname of Dee. According to the testimony of L.M. Melton, a cousin to Lawrence and one of his closest friends, “Dee done it all.”
In written reasons for judgment the trial court found that Jones had provided his uncle with assistance in managing and maintaining a cattle operation, yard maintenance, truck and equipment maintenance, carpentry work, plumbing and electrical work, and running errands. The trial court further found that these services were valuable and appreciable and had been rendered over a period from 1958 until the deceased’s death in 1993. There was testimony regarding specific services down through the years, as much as could be remembered, and services that were rendered on a regular basis. The testimony assigned and explained values for each of these services. The trial judge found that Jones had proved a specific value of $172,205 for the services rendered. Concluding that his services were little inferior to the gift and that the value of the gift did not manifestly exceed the value of the owner’s charges imposed upon Jones, the trial judge found that Jones was the recipient of remunerative and onerous donations during the lifetime of Lawrence and that Jones was accordingly the owner of the money.
On appeal the basic argument by appellants is that there was no donation inter vivos because there was no proof that ownership of the money passed to Jones while Lawrence was still living. Appellants characterize this case as an attempted donation mortis causa which failed because it did not comply with the required testamentary formalities. We reject this argument. We find that the gift of the money constituted inter vivos remunerative and onerous donations.
*400 La.Civ.Code art. 1523 defines the three kinds of donations inter vivos:
There are three kinds of donations inter vivos:
The donation purely gratuitous, or that which is made without condition and merely from liberality;
UThe onerous donation, or that which is burdened with charges imposed on the do-nee;
The remunerative donation, or that the object of which is to recompense for services rendered.
The onerous and the remunerative donations are defined in the next two succeeding articles:
Article 1524. Onerous donation
The onerous donation is not a real donation, if the value of the object given does not manifestly exceed that of the charges imposed on the donee.
Article 1525. Remunerative donation
The remunerative donation is not a real donation, if the value of the services to be recompensed thereby being appreciated in money, should be little inferior to that of the gift.
The next article tells us that onerous and remunerative donations are not subject to the rules peculiar to donations inter vivos, except when the value of the object given exceeds by one-half that of the charges or of the services. La.Civ.Code art. 1526. In the present case, the trial judge made a finding of fact, which we cannot say was clearly wrong, that the value of the bank accounts at the time of Lawrence’s death did not exceed by one-half that of the services rendered by Jones and the charges imposed upon him during Lawrence’s lifetime. Therefore, the mathematical proportion between the value of the gift and that of the services rendered and charges imposed satisfied the definitions of onerous and remunerative donations. In consequence, the rules peculiar to donations inter vivos do not apply in this case.
The applicable rules are those pertaining to conventional obligations or contracts. In Victorian v. Victorian, 411 So.2d 473 (La.App. 3rd Cir.1982), this circuit found that there was a remunerative and onerous donation. There was a written conveyance of land reciting that no money was paid, but that the consideration was, “vendee agrees to take care of vendor’s person and furnish him a place to stay until vendor’s death.” Id,, at 474. Because the consideration was thus expressed only in onerous terms, a question arose as to whether the consideration might also have been intended as remunerative for services rendered prior to the conveyance. In finding that the true intent of the parties expressed in the instrument included the recompense to the donee for services ^rendered before the execution of the conveyance, this circuit applied the rules pertaining to contracts in general and to sales in particular. Id., at 476.
The court in Succession of Jones, 505 So.2d 841 (La.App. 2d Cir.1987) held that the transfer of a $5,000 check as an onerous and a remunerative donation was valid under the rules applicable to contracts in general. The court construed the $5,000 gift as having been given in payment of an actual obligation owed by the donor for services rendered by the donee for many years. The court said that the gift could thus be construed as a valid onerous contract, under La.Civ.Code art. 1761, for the performance of a natural obligation. And it could be construed under La.Civ.Code art. 1909 as an onerous contract because each of the parties obtained an advantage in exchange for his obligation.
Finally, in affirming the trial judge in this case we rely on the Succession of Theriot, 532 So.2d 260 (La.App. 3d Cir.1988). In that case Elma Theriot, while she was alive, caused certain certificates of deposit that had previously been in her name alone to be reissued naming her as a payee but naming as well Catherine Trahan as an alternate payee. When Theriot died the certificates were still in the bank and had never been cashed. Catherine Trahan sued the Succession of Theriot claiming ownership of the certificates as remunerative donations. The trial judge found as a fact that Catherine Trahan provided services and assistance to Elma Theriot sufficient to qualify the gifts as remunerative donations. The trial court held that Elma Theriot by placing Catherine Tra-han’s name on the certificates intended to *401 transfer the certificates of deposit to Catherine Trahan. The trial court also concluded that by naming Catherine Trahan as an alternate payee, Theriot intended to make a remunerative donation. Finally, the trial court concluded that the donation was valid as a remunerative donation because remunerative donations do not require formal acts. This court affirmed.
The decision in Succession of Miller, 405 So.2d 812 (La.1981), illustrates the extent to which courts will go to enforce the clear will of the parties. The ease did not involve an onerous or remunerative donation, but rather, a gratuitous donation, and the rules applicable were accordingly those peculiar to donations inter vivos. A savings account stood in the name of “Mildred M. Miller or Mrs. Albertha S. Meyer (payable to either or survivor).” Ms. Meyer withdrew the funds from the | ¡¡account on May 24,1976, and Ms. Miller died the next day, May 25. Before the court was the question of whether Ms. Meyer could keep the money as a valid donation inter vivos, it being clear that, because Ms. Miller’s will had been declared invalid, Ms. Meyer could not get the money by virtue of a valid donation mortis causa. Since it was a gratuitous donation, it had to meet the strict formal requirements, one of which was the necessity for an act passed before a notary public and two witnesses. Manual gift is an exception to that formal requirement. The Supreme Court in this case upheld the donation of the savings account to Ms. Meyer as an inter vivos donation by construing it as a manual gift. The court recognized that the account itself was an incorporeal movable and as such not subject to a manual gift, but reasoned that the cash withdrawn from the savings account became a corporeal movable and was subject to a manual gift. Manual gift requires delivery, and the delivery took place in this case when Ms. Meyer withdrew the savings account, although she was the one who withdrew it. In reaching this ruling the Supreme Court went to some length to explain that the donor expressed her unqualified intent, on several occasions, that Ms. Meyer have the money.
La.Civ.Code art. 870 says that ownership of things or property can be acquired by the effect of obligations. An onerous contract is one where each of the parties obtains an advantage in exchange for his obligation. La.Civ.Code art. 1909. In this case we find that it was a pure onerous contract because the value of the gift was about equal to the services and the charges. Parties are free to contract for any object that is lawful. La.Civ.Code art. 1971. Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. La.Civ.Code art. 1983. Interpreting the manifest intent of Lawrence that his nephew Jones should be the owner of his money in Lawrence’s lifetime, we find that the transfer was inter vivos. Jones was the . owner of the money. It was not part of the succession of Lawrence.
The judgment is affirmed at appellants’ costs.
AFFIRMED.
COOKS, J., concurs in result.