780 So.2d 1163 (2001)
Jean BOUDREAUX, et al.
v.
The STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 2000 CA 0050.
Court of Appeal of Louisiana, First Circuit.
February 16, 2001.
Rehearing Denied April 2, 2001.
*1164 Byard Edwards, Jr., Andrew M. Edwards, II, Ponchatoula, Jean-Paul Layrisson, Timothy D. Scandurro, Stephen O. Scandurro, New Orleans, Henry G. Terhoeve, Keith L. Richardson, Baton Rouge, Counsel for Plaintiffs and The Class Representatives-Appellees-Jean Boudreaux, et al.
Richard P. Ieyoub, Attorney General, Baton Rouge, Julie Mobley Lafargue, Reginald W. Abrams, Special Assistant Attorneys General, Shreveport, Counsel for Defendant-Appellant-The State of Louisiana, Department of Transportation and Development.
Before: PARRO, FITZSIMMONS, and GUIDRY, JJ.
FITZSIMMONS, J.
The State of Louisiana, Department of Transportation and Development (DOTD) appeals from a class action judgment in which the court cast DOTD liable for flooding that had occurred in Tangipahoa Parish in 1983. After review of the record and law, we affirm the trial court judgment.

BACKGROUND
Plaintiffs, Jean Boudreaux and the "victims of the flood on April 6, 1983" (the class), filed a petition against various defendants, including DOTD. The petitioners were certified by the district court as a class. The class alleged that the construction of U.S. Interstate 12 caused flooding and damage to the property of the class members in part of Tangipahoa Parish on April 6, 7, and 8, 1983. Prior to trial, the class abandoned its claims of negligence and fault based on La. C.C. art. 2317. Additionally, questions of liability and damages were bifurcated. The subject of the instant appeal is limited to the trial court's decision to ascribe liability to DOTD under codal articles dealing with predial servitudes.
DOTD alleges as its assignments of error two trial court fallacies: its denial of DOTD's defense that the claims had prescribed pursuant to La. R.S. 9:5624; and, the trial court's disallowance of evidence of the return frequency of the rainfall event.

*1165 PRESCRIPTION[1]
The alleged flooding to the property contained within the class delineations occurred in 1983. The instant lawsuit was filed in 1984. DOTD asserts that evidence of instances of the occurrence of flood damage allegedly caused by the construction of Interstate 12, more than two years prior to the plaintiffs' lawsuit, was introduced at trial via the testimony of Ron Novak. Additionally, DOTD maintains that there had been a written complaint of flood conditions in the area as early as January 1973 by Edward Silverstein, an owner of property within the boundaries of the designated class where the interstate highway was constructed.
The letter written by Mr. Silverstein was confected while Interstate 12 was still under construction. It apprised DOTD that approximately two miles north of Interstate 12, the Tangipahoa River was rising faster than it had before and receding more slowly. At trial, Mr. Novak, who owned a lot on the Tangipahoa River, testified that in 1973, his neighbor, Mr. Silverstein, had incurred damage to his buildings due to a flood that they attributed to the recently constructed Interstate 12. Mr. Novak stated that his own land was inundated with water that "came close to the top of what we owned." He ultimately constructed his home two feet higher than the flood water level in 1973 in order to prevent the intrusion of water into his home. Nevertheless, he received twenty-seven inches of water in his house and four feet in the den as a result of the flood of 1983.
Prior to 1987, La. R.S. 9:5624 provided:
When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run when the damages are sustained. (Underlining supplied.)[2]
In Carbo v. Hart, 459 So.2d 1228 (La. App. 1st Cir.1984), writ denied, 462 So.2d 654 (La.1985), this court employed the statutory precepts of La.R.S. 9:5624 in stating that the prescriptive period for torts commences on the day the plaintiff knew or should have known that he has sustained some damage. Thus, the commencement of the tolling of the prescriptive period for an action based on La. R.S. 9:5624 began when the flooding problems about which the plaintiffs in Carbo complained became apparent to the plaintiffs. Carbo, 459 So.2d at 1230.[3]
DOTD's assertions of prescription in this instance are imbued with legal flaws. The flooding of Mr. Silverstein's property affected an isolated amount of land within the boundaries of the property owned by Mr. Novak and Mr. Silverstein. It was stipulated at trial that Interstate 12 was accepted by DOTD as having been completed on September 26, 1975; therefore, any flooding that occurred in 1973 would have been prior to the final physical configuration of the interstate highway as it existed in 1983. Moreover, the existence of a letter of complaint to DOTD by Mr. Silverstein that associated the construction of Interstate 12 with increased watershed generally affecting his property cannot be equated with the extensive volume of *1166 flooding that occurred in 1983.[4] The impact was significantly increased. Even Mr. Novak's testimony reveals that the 1973 water buildup did not reach the proportions of the 1983 flood.
An individual complaint, or awareness of a problem by two people, does not impute knowledge to the class, unless the other members should have known of the cause of their damage. The issue is not whether any particular individual's claim might have prescribed; we are asked to determine whether prescription applies to the members of the class. At the class certification hearing, the overwhelming testimony by the seven class representatives, and other individuals, recited that their homes or buildings on their properties had never flooded prior to 1983. There has been no evidence presented that the general members of the class knew, or should have known, that their lands were vulnerable to the flooding and damage that occurred as a result of the final physical configuration of the infrastructure for Interstate 12.
The trial court's denial of the exception of prescription is affirmed.[5]

DISALLOWANCE OF EVIDENCE OF RETURN FREQUENCY
The issue of liability of DOTD was limited at trial to violations of the predial servitude owed by DOTD, as the servient estate, in favor of the dominant estates represented by the certified class. See La. C.C. arts. 655-658 and 667. The class asserted that the natural servitude of drain was violated when Interstate 12 and its embankments caused backwater to invade and flood the surrounding lands in excess of the natural flood plain absorption. On appeal, DOTD claims that the trial court improperly prohibited evidence relating to the return frequency of rainfall as it related to the issue of causation and DOTD's "Act of God" defense. It is argued that the court should not have precluded DOTD's evidence on this issue, when it allowed the class to elicit evidence given by David Barnes and Dr. James Cruise on the frequency of rainfall. Mr. Barnes, a meteorologist, referred to the frequency of the magnitude of the rainfall of 1983 as occurring approximately every ten to twenty-five years. Dr. Cruise, an expert in the areas of hydraulics and hydrology, stated that the 1983 flood recurrence interval was probably less than fifty years. DOTD did not object to either expert's testimony on behalf of the class; therefore, any error in permitting the testimony is generally waived. La. C.E. art. 103A(1); Bates v. Denney, M.D., 563 So.2d 298, 300 (La.App. 1st Cir.), writ denied, 566 So.2d 961 (La.1990).
The class counters DOTD's assignment of error with a rally of reasons: the "Act of God" affirmative defense is procedurally prohibited because it was not alleged in DOTD's answer; the defense of force majeure is irrelevant to the limited claims based on servitudes by the class; and, alternatively, DOTD's failure to proffer the excluded evidence via a deposition waives any procedural right to consideration at this time by the court.
A defense asserted in a pre-trial procedure gives fair notice of the nature of the defense, prevents surprise, and satisfies the duty established in La. C.C.P. art. 1005 to affirmatively assert the defense. Austrum v. City of Baton Rouge, 282 So.2d 434, 437 (La.1973). In the instant *1167 proceedings, "Act of God," or force majeure, was not delineated in DOTD's answer to the petition; however, it was specifically alleged in the joint pre-trial order. This pre-trial procedure properly places the defense of "Act of God" at issue. Worley v. Winston, 550 So.2d 694, 696 (La. App. 2nd Cir.), writ denied, 551 So.2d 1342 (La.1989); see also Winter v. F.A. Richard & Associates, Inc., 95-578 (La.App. 5 Cir. 11/28/95), 665 So.2d 611, 613 (relying on La. C.C.P. art. 1154).
In accordance with La. C.C. art. 655-658, the owner of a servient estate may not do anything to prevent the flow of water, and the owner of the dominant estate may not do anything to render the servitude more burdensome. Additionally, article 667 prohibits the owner of one estate from performing work on his estate that "may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
Testimony as to the amount of rain that fell within the subject area in the flood of 1983 was deemed admissible; however, the evidence was restricted to the time frame of the 1983 flood. Ultimately, the court limited consideration to evidence relating to whether the addition of Interstate 12, and its infrastructure and the embankment, prevented the waters of 1983 from running their natural course, or whether there would have been flooding in 1983 to the properties of the class, irrespective of the DOTD roadway and embankment.
Additionally, testimony of comparable rainfall magnitudes in the Tangipahoa Flood Plain prior to the construction of 12 was permitted by the court. However, when plaintiffs objected to DOTD's introduction of evidence of the return frequency of rainfall, in furtherance of its La. C.C. art. 667 and "Act of God" defenses, the court sustained the objection on the basis of irrelevancy. An objection to the illustrations presented by DOTD involving different flood plains than the subject Tangipahoa River area was also sustained.
At the court's suggestion and per the parties' agreement in open court, the trial judge consented to receive the proffer of testimony on behalf of DOTD via a deposition to be completed within thirty days after the trial. Although DOTD had tendered a generalized statement regarding its proffer, the content of the proffer was to be in the form of a deposition. DOTD failed to produce the deposition. The evidence by Dr. Naghavi, that was to have been proffered, was never submitted for this court's review. DOTD's failure to do so makes it impossible for this court to review the issue. DOTD has, thereby, waived its right to argue the matter before the court. Our Lady of the Lake Regional Medical Center v. Helms, 98-1931 (La. App. 1 Cir. 9/24/99), 754 So.2d 1049, 1056, writ denied, 99-3057 (La.1/7/00), 752 So.2d 863.

LIABILITY
DOTD does not explicitly assign as error the trial court's finding of liability; however, this court's review of the evidence submitted in the record does not reveal the existence of manifest error in the trial court's attribution of liability to DOTD. See La. C.C.P. art 2164. Dr. Alim Hannoura, an expert in the areas of hydrology and hydraulics, opined that the flooding that transpired beyond the area of the Tangipahoa River flood plain, within the parameters of the class, was caused by backwater produced by the obstruction of Interstate 12. He stated that if the bridge had not been there, water would have passed through the flood plain without flooding the subject areas. Dr. Cruise concluded that as a result of the bridge, the embankment, and the heavy underbrush, there existed a seventy-six percent restriction of the flood plain. This obstruction left only twenty-four percent of the flood plain available to accommodate backwater. Finally, the class successfully refuted DOTD's expert, Dr. Chester Watson. Dr. Cruise and Erica Gomez, an engineer for the United States Army Corps of Engineers, demonstrated that Dr. Watson's computer analysis produced inflated estimates of water discharge in 1983 because he failed to include the significant impact of the embankment and resulting backwater.
*1168 There is ample evidence in the record to support the trial court's conclusion that DOTD's erection of Interstate 12 violated the natural servitude of drainage. The obstruction caused by the bridge and its embankment was the cause in fact of the flooding of the properties within the boundaries of the class. All costs associated with this appeal, in the sum of $3,547.00, are assessed to The State of Louisiana, Department of Transportation and Development
AFFIRMED.
GUIDRY and PARRO, JJ., concur in the result.
NOTES
[1] The class asserts that the issue of prescription has already been appealed in conjunction with a prior judgment certifying the class. However, in Boudreaux v. State, Department of Transportation, 96-0137 (La.App. 1 Cir. 2/14/97), 690 So.2d 114, 118, we stated in footnote 4 that "DOTD did not appeal the court's decision on its exception of prescription." As an interlocutory judgment, the denial of the exception of prescription is ripe for appeal at this time.
[2] In 1987, the statute was amended to provide that prescription "shall begin to run after the completion and acceptance of the public works."
[3] In Carbo, the flooding allegedly began ten years prior to the filing of the petition, however, the plaintiffs claimed that they were unable to decipher the entity that possessed jurisdiction over the canal at issue.
[4] This scenario is distinguishable from the facts in Wilson v. Department of Transportation and Development for State of Louisiana, 98-1142, 98-1143, 98-1144, 98-1145, -98-1146, 98-1147, 98-1148, 98-1149, 98-1150, 98-1151, 98-1152, 98-1153, 98-1154 98-1155, 98-1156 (La.App. 4 Cir. 4/14/99), 737 So.2d 866, writ denied, 99-2625 (La.12/17/99), 752 So.2d 165. In Wilson, the cause of the alleged damage was the actual process of constructing the highway ramps, and plaintiffs' testimony substantiated that the damage was sustained more than two years prior to the filing of the suit.
[5] Discussion of the necessity of the intent to inflict damage upon private property as a variable in the apposition of La. R.S. 9:5624 is pretermitted by the disposition of this issue.