GUIDRY, J.
|2A parent, who executed an act of sale with a counter letter to convey property to one of her children, appeals a judgment dismissing her petition to rescind the sale. For the following reasons, we reverse.
FACTS AND PROCEDURAL HISTORY
On February 15, 2001, Iris Tate executed an act of sale whereby she allegedly sold property to her daughter, Pauline Tate, for the sum of $70,000.00. The property conveyed contained two lots, “L” and “M,” in the Shelly’s Homesites subdivision in Denham Springs. Each lot contained a residence with a separate municipal address. The residence located on Lot M, with a municipal address of 308 Beech Street, was the family home in which Iris resided. The residence located on Lot L, with a municipal address of 236. Beech Street, was a separate apartment home that was occasionally rented out when various family members did nof reside in it. In a counter letter executed contemporaneously with ,the act of sale, the parties to the act of sale, Iris and Pauline, acknowledged that “in fact no sum was paid to Seller [Iris] and further it was and is agreed between Buyer [Pauline] and Seller that Seller may reside on the subject property as long as she so desires.” The act of cash sale was duly recorded in the conveyance records for Livingston Parish on February 15, 2001, but the counter letter was not.
On July 6, 2004, Iris filed a “Petition to Rescind Sale” in which she alleged that Pauline never paid any money for the conveyance of the. property and that her granddaughter, Lisa Duvall (Pauline’s daughter), who claimed to have Pauline’s power of attorney, had been “threatening to transfer ownership of the property to other unnamed individuals.” A notice of Lis Pendens was also filed on the same date as the petition, giving notification that there was litigation pending “affecting and regarding the rightful ownership, and the percentages thereof,” of the |sproperties at issue. Pauline answered the petition and generally denied the allegations contained therein.
On January "24, 2008, Justification, L.L.C., represented by Lisa Duvall[1] as the managing member, filed a “Petition to Intervene, For Declaratory Judgment, and Cross-Claim for Damages.”' In the petition, Jústification claimed to be the rightful owner of the property in dispute by virtue of the following transactions:
• an Act of Donation, dated July 6, 2004, wherein Pauline donated “Lot L” to her daughters, Lisa Juban Du-vall and Susan Michelle Lozier.
• an Act of Donation, dated August 5, 2004, wherein Susan donated her interest in Lots L and M[2] to Lisa.
*432 • An Act of Exchange, dated August 6, 2004, wherein Lisa transferred the properties to Justification.
Justification sought judgment declaring it to be the rightful owner of Lots L and M or alternatively declaring that Iris had no authority to allow one of her grandsons to occupy the apartment on Lot L pending resolution of the ownership dispute. Lastly, Justification named Iris as a defendant in its cross claim, wherein it sought an award of damages for loss of rent, property depreciation, and loss of an opportunity to sell the apartment located on Lot L, allegedly due to Iris’s actions of blocking any efforts to sell the property and the alleged wrongful occupancy of the apartment by Iris’s grandson. Alternatively, in the event Justification was not declared to be the owner of the properties, Justification sought reimbursement for all property taxes it paid on the properties.
Prior to the matter proceeding to trial, the trial court signed a “Judgment on Rule” on May 23, 2008, ordering any occupant of the apartment home to vacate the premises and recognizing Lisa’s “discretion to use said residence as she deems | ^appropriate pending further orders of the court.” Following a trial on the merits, held July 10, 2009, the trial court rendered a judgment in favor of Pauline, finding that Iris failed to carry her burden of proof and dismissed the action by a judgment signed August 13, 2009. Iris appealed.
On appeal, this court recognized that although decreed a directed verdict,[3] the judgment of the trial court was actually an involuntary dismissal granted pursuant to La. C.C.P. art. 1672(B). This court then found that the parties’ transaction on February 15, 2001, was a relative simulation whereby the act of sale was really an attempt to donate the properties at issue. In evaluating whether the transactions constituted a valid donation, it appeared that acceptance of the donation had not occurred so as to perfect a valid inter vivos donation of the properties. Nevertheless, citing La. R.S. 9:2721(A),[4] this court found that because the counter letter was not recorded, “Justification, L.L.C., the record owner of the property, is protected in its ownership by the failure of the parties to record the [counter letter]” and affirmed the judgment. See Tate v. Tate, 09-2034, p. 6 (La.App. 1st Cir.6/11/10), 42 So.3d 439, 443. Iris then filed an application for a writ of certiorari and/or review to the Louisiana Supreme Court, which vacated the judgments of the lower courts and remanded the matter to the district court for a new trial to consider whether the outcome would be affected by the donations being gratuitous rather than onerous transfers or to consider whether the notice of lis pendens that was filed in the public records affected the subsequent transfers of the property. Tate v. Tate, 10-1964 (La.8/31/11), 68 So.3d 513.
|,■¡On remand, Ms filed a petition for declaratory judgment against Pauline, *433 Lisa, Susan, and Justification (hereinafter collectively referred to as “defendants”),[5] seeking a decree that the February 15, 2001 cash sale and the subsequent transfers of the property were null and void. An answer to the petition was filed by Lisa in which she denied the allegations of the petition. On March 12, 2014, a trial pursuant to the remand was held, following which the trial’ court rendered judgment holding that the transfer of the property from Iris to Pauline was a remunerative donation and that no fraud was involved in the subsequent transfers of the property. Thus, the trial court again dismissed Iris’s petition to rescind the sale in a judgment signed July 23, 2014. Iris now appeals that judgment.
ASSIGNMENTS OF ERROR
In this appeal, Iris alleges that the trial court committed the following errors:
1. The trial court erred when it held that the February 15, 2001 “Cash Sale” was a remunerative donation.
2. The trial court erred when it held that the ordinary services the appellee claims to have rendered to her mother [since] age 13, went beyond the usual parent-child gratuities.
3. The trial court erred when it overruled the appellant’s Exception of No Cause of Action and the Motion to Strike.
4. The trial court erred by failing to follow the dictates of, the Louisiana Supreme Court on remand.
DISCUSSION
In her third assignment of error, Iris asserts that the trial court should have sustained her exception raising the objection of no cause of action and barred the defendants from presenting any evidence to establish their claim that the 2001 act of sale' was a remunerative donation.. We find no merit in this assignment.
On remand, the trial court ordered the parties to file a joint pre-trial order by March 18,’ 2013. The defendants filed their inserts for the pre-trial order on that lúdate, although the inserts were required to be submitted to plaintiffs counsel'on or before March 4, 2013. The trial court’s scheduling order, which initially' set the matter for a bench trial for the week of April 15, 2013, provided that in the event the final pre-trial order was not timely filed with the clerk of the district court, “the matter will be continued and sanctions máy be imposed.” (Emphasis in original.) The case was eventually reset for a bench trial held on March 12, 2014. In the inserts untimely submitted by the defendants for the joint pre-trial order, the defendants raised, for the -first time, that the transaction between Iris and Pauline was, at a minimum, a combination onerous and remunerative donation.
A. defense asserted in a pre-trial procedure gives fair notice of the nature of the defense, prevents surprise, and satisfies the duty established in La. C.C.P. art. 1005 to affirmatively assert the defense. Boudreaux v. State, Department of Transportation and Development, 00-0050, p. 5 (La.App. 1st Cir.2/16/01), 780 So.2d 1163, 1166, writ dismissed, 01-1329 (La.2/26/02), 815 So.2d 7. Moreover, the remanded trial of this matter was' continued for almost a year following the defendants’ assertion of their donation defense in their untimely pretrial inserts. Hence, we find no error in the trial court’s failure to sustain the peremptory exception asserting no cause of action.
Iris jointly presents several arguments in support of her first two assign *434 merits of error. First, she argues that the trial court erred in holding that the act of cash sale was a remunerative donation because neither party testified that the property was transferred to Pauline for any services that she had rendered to. Iris. Iris contends that the record is clear that she did not transfer the property to Pauline because she felt that- she owed compensation to Pauline or that she intended to compensate Pauline for any. services rendered. Thus, we must consider whether the evidence shows that Iris had the requisite donative intent at the time the transaction occurred. On remand, the testimony and evidence introduced at the l-vfirst trial was considered as already in evidence for the purposes of the trial on remand. See La. O.C.P. art. 1978.
Both Iris and Pauline testified regarding Iris’s intent in executing the act of cash sale. At the original trial, Pauline testified that her mother asked her to enter into the act of cash sale so that her mother would “feel safe.” Iris, who only testified at the original trial, stated that she transferred the property to Páuline for Pauline to “make out a will for all my children as her father would have done. I wanted her to take care of the place and make out the will for all my children because that would be out of my life.” When asked why she would ask somebody else to do something she could have done herself, Iris replied “[bjeeause I don’t have the mind to.” Iris also explained that she “wanted Pauline to take care and make out the will to all of my children. Not just for her, but for all of my children. For the will to be made out so that the land when I die, the will was going to be for all of my children. Not just her.”
At the trial on remand, Pauline again testified that her mother put the property in her name so that her mother would “feel safe” and also because the “other ones,” Pauline’s siblings, were not visiting Iris. Pauline said that her mother’s reason for placing the property in her name was because Iris trusted Pauline to see that nobody removed Iris from the home. Pauline disparaged her mother’s statements claiming that she (Iris) transferred the property to Pauline so that Pauline could arrange for a will leaving the property equally to all of Iris’s children as making “no sense,” since that result would have occurred on Iris’s death, even without a will. Pauline acknowledged that she helped her mother out “a great deal,” and she believed that her mom thought there was a value to what Pauline was doing. Nevertheless, Pauline acknowledged that she and her mother did not discuss Pauline being compensated for the things she did for her mother, and Pauline stated that she never expected any compensation for anything she did.
IsBased on this evidence, we find merit in Iris’s assertion that there was no proof of Iris’s intent to remunerate Pauline by executing the act of sale. While the rules peculiar to donations inter vivos do not apply to a remunerative donation,[6] we have been unable to find any authority that states that such donations are nevertheless exempt from establishing a dona-tive intent. Our review of cases involving remunerative donations all recite facts wherein the donor expressed an intent to convey the property in remuneration for service rendered. See Succession of Jackson, 537 So.2d 736, 737 (La.App. 1st Cir.1988), writ denied, 541 So.2d 857 (La.1989) (in the cash deed wherein the alleged do *435 nor conveyed money and property to the alleged donees, the donor stated that the consideration for the transfer were the personal services rendered by the donees since 1972); Schindler v. Schindler, 13-361, p. 7 (La.App. 5th Cir.12/19/13), 131 So.3d 439, 443 (wherein the donee testified regarding an agreement between her and the donor that .she would.be paid for caring for him); Succession of Lawrence, 94-977, p. 2 (La.App. 3d Cir.2/1/95), 650 So.2d 398, 399, writ denied, 95-0571 (La.4/21/95), 653 So.2d 572 (wherein the court found two acts by the donor — one of adding the do-nee as an alternate payee on his financial accounts and a second of executing a notarized document wherein the donor declared he wanted the donee to have his property, established the donor’s intent); Succession of Theriot, 532 So.2d 260, 263 (La.App. 3d Cir.1988) (wherein a witness testified the donor had repeated on several occasions that she would “fix” the donee “up financially”); and Maleig v. Maleig, 435 So.2d 496, 499 (La.App. 4th Cir.), writ denied, 441 So.2d 765 (1983) (wherein the evidence showed that' the donor had. discussed -with several persons her intent to transfer property to her son, the.donee;-to reward him for his labor over the years).
Inin Schindler v. Biggs, 06-0649, p. -7 (La.App. 1st Cir.6/8/07), 964 So.2d 1049, 1053-54, the defendant argued that funds he was alleged to have wrongfully converted were actually donated to him by the plaintiff in remuneration ■ for services he had rendered. The- facts established that the defendant and his girlfriend had helped care for the plaintiff, but the plaintiff disputed giving the defendant any money and filed suit alleging conversion. The trial court'rendered summary judgment in favor of the plaintiff finding that the defendant had converted the plaintiffs funds. On appeal, this court reversed the summary judgment, finding that genuine issues of material fact existed regarding whether the plaintiff had donative intent, as the record .contained conflicting evidence regarding the plaintiffs intent. This court further observed that the donee has the burden of proving the donation and the proof must be strong and convincing.
In this case, Iris testified that she executed the act of sale for the purpose of having Pauline arrange for the equal distribution of the property to all of her children. Pauline, on the other hand, stated that Iris executed the act of sale to “feel safe” and to see that no one removed Iris from her home. More importantly, however, Pauline acknowledged that she and Iris never discussed Iris compensating Pauline for any services Pauline performed for Iris. Básed on this evidence, we do not find that Pauline established Iris’s intent to remunerate Pauline by strong and convincing proof.
Additionally, we also find merit in Iris’s argument alleging the trial court erred in-holding that the act of cash sale was a remunerative donation because Pauline failed to establish the value of the services she rendered to -Iris.
In Succession of Jackson, this court reversed -and remanded the case to the trial court based on the failure of the record to establish the value of the services rendered to support the finding that the donation in that case was remunerative. This court expressly held-the burden of proof is first on the donee to prove that injjfact a donation is remunerative or onerous, which proof includes proving the value, of the services rendered. It is only once the donee has -met this initial burden that the burden switches to the party attacking the donation. Succession of Jackson, 537 So.2d at 740. As this court further observed, “[i]f all that were required of the donee would be proof that remunerated *436 services and/or onerous charges had been performed to place the burden of proof under LSA-C.C. art. 1526 upon a party-attacking the donation; then the language óf LSA-C.C. arts. 1524 and 1525 is superfluous.” [7] Succession of Jackson, 537 So.2d at 739.
The record before us does not contain any evidence regarding the value of the services that Pauline testified that she performed for Iris. While it is undisputed that such services were provided, there is no basis in the record wherein to establish what value should be assessed for those services. In Schindler v. Schindler, 13-361 at p. 7, 131 So.3d at 443, the donee testified that the donor had agreed to compensate her at the rate of $13 per hour, but she was never paid on that basis. Instead, the only compensation she received were the contested donations. In Succession of Lawrence, 94-977 at p. 3, 650 So.2d at 399, the court observed that “[t]he testimony assigned and explained values for each” of the services the donee had performed for the donor. In Succession of Theriot, 532 So.2d at 264, the court accepted the testimony of the donee as to the value of her services.
In the record before us, there is absolutely no such testimony or other evidence presented, on which to base a determination of the value of the services Pauline performed. Absent such evidence,' we agree that it was error for the trial court to find that Pauline successfully proved that the act of cash sale was a 1 n remunerative donation.[8]
Hence, we find that the evidence in the record before us fails to support the trial court’s finding that the act of sale was a remunerative donation. There is no strong and convincing evidence of Iris’s intent to donate the property nor is there any evidence regarding the value of the services rendered. Accordingly, we reverse the judgment of the trial court finding the act of cash sale to be a remunerative donation and hereby declare the act of cash sale to be invalid. See Stevens v. Stevens, 476 So.2d 883, 889 (La.App. 2d Cir.), writ denied, 478 So.2d 908 (La.1985).
In her final assignment of error, Iris criticizes the trial court’s failure to follow the dictates of the Louisiana Supreme Court in remanding the matter. In remanding this matter, the Louisiana Supreme Court expressly instructed that the transactions at issue be considered in light of “the law at the time of the transfers.” The act of cash sale between Iris and Pauline was executed in 2001. The subsequent transfers of the property between Pauline, her daughters, and Justification all occurred in 2004. Prior to January 1, 2006, jurisprudence interpreting the existing laws regarding recordation and the public records doctrine held that in order for third parties to be protected based on the strength of the public records, it must be shown that an innocent third paiTy purchased the immovable property, for value, in reliance on the public records. See Owen v. Owen, 336 So.2d 782, 786-88 (La.1976) and Mathews v. Mathews, 35,-984, pp. 4-5 (La.App.2d Cir.5/8/02), 817 So.2d 418, 420-21; see also Sonnier v. *437 Conner, 43,811, pp. 25-27 (La.App.2d Cir.12/3/08), 998 So.2d 344, 360-61, writ denied, 09-0309 (La.4/3/09), 6 So.3d 773.
11?As previously discussed, although this court found that a valid donation of the property had not been perfected in the original appeal, we nevertheless held that Justification, as a third party, was protected in its ownership of the property based on the protections of the public records doctrine. On further consideration in light of the law as it existed at the time the property was transferred from Pauline to her daughters, and eventually to Justification, and consistent with the supreme court’s instructions on remand, we find that Justification is not entitled to be protected in its ownership as, unquestionably, the transfers of the property from Pauline to her daughters and eventually to Justification were purely gratuitous. Thus, under the law as it existed at the time the property was transferred to Justification, because Justification did not purchase the property, for value,[9] it is not entitled to be protected in its ownership. See Mathews, 35,984 at pp. 4-5, 817 So.2d at 420-21.[10]
CONCLUSION
Based on the determinations made herein, we find that the trial court erred in holding that the act of cash sale validly transferred the property at issue as a remunerative donation. Accordingly, we reverse the judgment of the trial court and further hold that Justification’s ownership interest in the property is not protected under the public records doctrine. Thus, the 2001 act of cash sale and the subsequent acts affecting the property executed between the defendants are annulled. See Mathews v. Mathews, 43,806, p. 19 (La.App.2d Cir.12/17/08), 1 So.3d 738, 748. All costs of this appeal are cast to the appellee, Justification, LLC.
REVERSED.

. Lisa Duvall is Pauline’s daughter who held a power of attorney to act on behalf of Pauline in the subsequent donations of the property by Pauline to hep daughters.

. Although not referenced in the petition for *432 intervention, Pauline donated "Lot M” to her daughters in an act of donation dated June 24, 2004. Both the June 24, 2004 and the July 6, 2004 acts of donation were actually signed by Lisa on behalf of Pauline as Pauline’s "attorney-in-fact."

. See La. C.C.P. art. 1810.

. Louisiana Revised Statutes 9:2721(A) was repealed by 2005 La. Acts, No. 169, § 8', but was in effect at the time of the transactions. That statute formerly provided "[n]o ... counter letter ,.. relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated. Neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.”

. All of the named defendants were represented by the same counsel.

. This provision, which before 2008 was contained in La. C.C. art. 1526, is now contained to La. C.C. art. 1527.

. The provisions of former La. C.C. arts. 1524-1526 are now contained in La. C.C. arts. 1526 and 1527.

. As for Iris’s remaining argument in support of her first two assignments of error, we find no merit in her assertion that the services rendered by Pauline were merely ordinary services,, customary of the usual parent-child gratuities, as it has been held that a child’s statutory duty to support her parent does not preclude a finding of remunerative donation. Jennings v. Goldsby, 480 So.2d 354, 357 (La.App. 3d Cir.1985).

. At trial, Lisa testified that she donated the land to Justification. She acknowledged that she already held a hundred percent membership interest in the LLC at the time she executed the act of exchange, although in the document she recited, that she received the interest as a consequence of executing the act of exchange. She explained that she placed the property in the LLC because the property was not insured and one of her cousins had a dog on the property that they feared might cause harm as there was a child living next door to the property.

. Because of this finding that Justification is not entitled to rely on the protections of the public records doctrine, we do not reach the issue of the effect of the Lis Pendens filed in the public records that the supreme court also urged for consideration.