| ¶ JONES, Judge.
Plaintiffs/Appellants filed this class action lawsuit alleging that their property was damaged as a result of pile driving and movement of heavy trucks through their neighborhood by the defendants/ap-pellees. Plaintiffs appeal the judgment of the trial court dismissing their causes of action. For the reasons stated herein, we affirm.

FACTS

The Louisiana Department of Transportation and Development (DOTD) entered into contracts with Boh Brothers Construction Company, Inc. (Boh Bros.), to construct access and exit ramps to the Greater New Orleans Bridge #2 (GNO). Boh Bros, subcontracted the pile driving work to Raymond International Builders, Inc. (Raymond), which was insured by Liberty Mutual Insurance Company (Liberty). Construction on the GNO bridge began on September 8, 1980 and continued until July of 1988.
Soon after the construction began, several plaintiffs, who lived in the vicinity of the GNO bridge, began to notice damage to their homes. In particular, Woodrow Wilson, the lead plaintiff in this class action, was a member of a neighborhood group called Residents on Bodenger Boulevard (ROBB). ROBB wrote a letter to Senator Fritz Windhorst on April 13, 1985, and mentioned that the Wilson residence was one of the several homes that had allegedly been damaged as a result of the construction of the GNO bridge. On June 19, 1985, ROBB sent a letter to Boh Bros. Construction Company, listing the Wilson residence as one of the homes that allegedly sustained damage from the GNO bridge construction. However, several of the other plaintiffs could not give a specific date on which Lthey first noticed damage to their homes. Nevertheless, each plaintiff testified that the damage to their homes was first noticed after the construction to the GNO bridge had begun, or while the pile driving activity was still in progress.
*869 After receiving the letter from ROBB, Sandra Duckworth, an employee of Boh Bros., allegedly wrote a letter to plaintiffs, Edward and Gertie Edwards, stating that the claims made by each plaintiff would be considered when the contract to construct the GNO bridge was completed. However, Boh Bros, did not offer to pay for any damage caused to the plaintiffs’ homes as a result of the GNO bridge construction. Instead, the plaintiffs only filled out claim forms and submitted them to the defendants’ representatives, who verbally assured the plaintiffs that their claims would be considered when the contract was completed.
After the construction was completed, the defendants refused to consider the plaintiffs’ claims. On September 1, 1988, thirteen plaintiffs filed suit for property damages to their homes sustained as a result of construction work on the GNO bridge, pursuant to La. R.S. 9:5624 (post-amendment). Two other plaintiffs filed suit on February 17, 1994. The fifteen suits were consolidated for trial. According to the petitions filed, the damages to the plaintiffs’ homes began on or about September 8, 1980 and continued until June or July of 1988. The petitions further alleged that a combination of pile driving and the movement of heavy trucks carrying equipment through their neighborhoods by the defendants caused the damages to the plaintiffs’ homes. The petitions also included claims of negligence, past, present, and future property damages, mental anxiety, anguish, inconvenience, and loss of use and enjoyment of their properties and homes.
The plaintiffs sued the State of Louisiana, through the Department of Transportation and Development, Boh Brothers Construction Company, and|3Raymond International and its insurer, Liberty Mutual Insurance Company. However, shortly before trial, plaintiffs voluntarily dismissed their claims against Boh Bros., Raymond International, and Liberty Mutual without prejudice. Thereafter, third party demands were brought by the State, through DOTD, against its agents, Boh Bros., Raymond, and Liberty Mutual. Immediately prior to trial, the State and its agents filed exceptions of prescription/peremption in fourteen of the suits, asserting that the personal injury and property claims were prescribed or perempted by the two-year statute of limitations set out in La. R.S. 9:5624. In their exceptions, the State and the third party defendants asserted that under La. R.S. 9:5624, time began to run when the damages were first sustained while the project was ongoing.
In response to the exceptions, plaintiffs argued that the two-year prescription period had begun to run following the first occurrence of property damage after completion of the work, regardless of whether La. R.S. 9:5624 was deemed prescriptive or peremptive. The plaintiffs also argued that because all of the plaintiffs’ suits, except two filed in 1994, were filed in September 1988, after the construction ended in December 1986 or July 1988, that peremption had not run and the suits were timely asserted.
The plaintiffs also argue that their claims for personal injury had not prescribed because they were classified as continuing torts subject to the one-year presciptive period of Lousiana Civil Code art. 3492. Plaintiffs argued that the State and its agents assured them that their claims would be considered after the work on the bridge was completed. Thus, under the Due Process provision of Article I § 2 of the State Constitution of 1974 and the doctrine of contra non \ ¿valentem[1], prescription was suspended until December 1986, the earliest date when any of the work in question was completed.
*870 On August 21,1997, the trial court found that La. R.S. 9:5624, prior to the 1987 amendments, was controlling. La. R.S. 9:5624, in its pre-amendment form, provided:
“When private property is damaged for public purposes, any and all actions for such damages are prescribed by prescription of two years, which shall begin to run when the damages are sustained.” (Emphasis added.)
The trial court also held that under La. R.S. 9:5624, all of the plaintiffs’ causes of action, property damage claims, and personal injury claims, were prescribed by the two-year prescriptive period running from the date the damages first occurred. The trial court held that the prescriptive period (two years) ran during the construction of the GNO bridge. However, the court decided to hold an evidentiary hearing based on the plaintiffs’ assertions that prescription was suspended until after construction was completed.
After the evidentiary hearing on the defendants’ exceptions regarding the late filing of the plaintiffs’ suits, the trial court received additional testimony and evidence on the plaintiffs’ claims of contra non va-lentem and the denial of Due Process by the State. Fifteen witnesses testified concerning the damages that they sustained from the construction project, and all indicated that the damages were sustained in either 1984 or 1985. The testimony also concerned meetings held with the defendant’s representatives, wherein the defendants told the plaintiffs that their claims would be investigated. The court found that the evidence proved that the plaintiffs did complain to State officials about their damages when the work |swas ongoing, were told to fill out claim forms by the defendants, and were verbally assured by State officials that their claim would be considered when construction was completed.
On October 10, 1997, at the conclusion of the evidentiary hearing, the court rendered judgment holding that La. R.S. 9:5624 was peremptive. The court held that because all of the plaintiffs’ damages were first sustained in 1984 or 1985, that all causes of action were perempted in 1988, when thirteen of the suits were filed. The court found that the fact that La. R.S. 9:5624 referred to “prescription” did not prevent the courts from enforcing the statute as a “peremptive” statute. The trial court specifically rejected any contention by the plaintiffs that the two year period begins to run at the end of the activity which was causing the damages. The court concluded that the issues of contra non valentem and denial of Due Process were inapplicable and that the evidence taken in the hearing was moot. Thus, the plaintiffs’ suits were dismissed. It is from this judgment that the plaintiffs appeal.

DISCUSSION

The plaintiffs failed to take an appeal from the August 21, 1997, judgment of the trial court; therefore, that judgment became final. However, the August 21, 1997 judgment failed to address the issues of contra non valentem and denial of Due Process. Thus, these issues are ripe for appeal. See La. C.C.P. art. 2087(A)(1); La. C.C.P. art. 1974. Nevertheless, we pretermit any discussion of contra non valentem or the denial of Due Process, because the plaintiffs also failed to include the testimony taken in the evidentiary hearing pertaining to those issues from the record on appeal. Therefore, the plaintiffs restricted the record on appeal to only the pleadings and judgments in the fifteen consolidated cases.
| ¿The plaintiffs’ primary argument on appeal is whether La. R.S. 9:5624 is a prescriptive statute where the two-year period begins to run from the first occurrence of any damage after completion of the public work, or whether the statute is peremptive where the two-year period begins to run when the damage is first sustained.
The defendants maintain that La. R.S. 9:5624, in its pre-amendment form, is controlling. The defendants also argue that the plaintiffs herein all sustained or noticed property damage in either 1984 or 1985, and therefore prescription has run *871 irrespective of whether the statute is viewed as prescriptive or peremptive. We agree.
The two-year prescriptive period for bringing suit when private property is damaged for public purposes applies to any and all claims for damages resulting from public work. Wilson v. City of Baton Rouge, 96-0015 (La.App. 1 Cir. 11/8/96), 683 So.2d 382, writ denied, 96-2936 (La.1/31/97), 687 So.2d 408. The present post-amendment form of Louisiana Revised Statute art. 9:5624 states:
“When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run after the completion and acceptance of the public works.” (Emphasis added)
The amendment to [La. R.S. 9:5624] setting the prescriptive period for claims for damage to property for public purposes which changed the beginning of the prescriptive period to the date of completion and acceptance of the public work rather than the date when damages are sustained is not to be applied retroactively to claims which were barred when the amendment was enacted. Small v. Avoyelles Parish Police Jury, 589 So.2d 1132 (La.App. 3 Cir.1991), writ denied, 593 So.2d 373, writ denied, 593 So.2d 374.
Lin other words, the amendment to La. R.S. 9:5624, changing the point of accrual of the two-year prescriptive period, from the time when damage was “sas-tained” to “completion” and acceptance of public works, does not apply retroactively to actions where prescription has already run under the old law at the time the suit was filed, so that the effect of prescription had already vested. Lyman v. Town of Sunset, 567 So.2d 1171 (La. App. 3 Cir.1990), writ denied, 571 So.2d 648. Therefore, when an action for damages to property incurred for public purposes occurs, in order to be timely, the action must be brought within two years of the time the damage was first sustained. Thus, it appears from the facts and evidence in this case that the plaintiffs have faded to observe the allotted time within which to file their claims.
Furthermore, in Lyman v. Town of Sunset, 500 So.2d 390, 392 (La.1987), cited in 567 So.2d 1171, the Supreme Court held La. R.S. 9:5624 to be peremptive, stating:
“The legislature found it necessary to create an exception to La. C.C. art. 3492, by allowing two years for bringing suit when private property is damaged for public purpose. While allowing an additional year to bring suit, the statute serves to limit governmental exposure by requiring “any and all actions” must be brought within two years after damages are sustained. This statute was enacted in its present form in 1950. Though we have never interpreted the statute, a cohesive body of jurisprudence has been developed by our courts of appeal.”
Since the statute herein has already been held to be peremptive, contra non volen-tem, Due Process violations, and the other arguments and issues presented by plaintiffs are without merit. The plaintiffs did not avail themselves of their own right to litigate these issues. Furthermore, the plaintiffs were not prevented from pursuing damage claims, irrespective of their reliance upon the statements made by |sBoh Bros, to consider their claims. Therefore, the plaintiffs’ suits are hereby dismissed.

DECREE

For the reasons stated herein, the trial court’s judgment dismissing the plaintiffs’ suits is hereby affirmed.

AFFIRMED.

. Contra non valentem agere nulla currit praescriptio (hereinafter "contra non valen-turn") means that no prescription runs against a person unable to bring an action.