LPEATROSS, J.
This appeal arises from a judgment of the trial court awarding Plaintiff, Johnny Jones, damages in the amounts of $1,474 as compensation for .45 acres of land owned by him that was taken by the widening of a drainage ditch by Defendant, Ouachita Parish Police Jury (“Police Jury”), and $3,000 for the cost of removal of spoil and debris from Mr. Jones’ property. The trial court did not award general damages to Mr. Jones, who specifically sought damages for mental anguish and inconvenience, and did not award attorney fees sought by Mr. Jones. Mr. Jones appeals, asserting four assignments of error, challenging both monetary awards as described above and the trial court’s failure *1096 to award attorney fees. For the reasons stated herein, we amend the judgment of the trial court and, as amended, affirm.

FACTS

Mr. Jones owns a tract of land consisting of approximately 27 acres in eastern Ouachita Parish. This area, known as the Town and Country area, has historically experienced flood control and drainage problems. It was known by both parties for some time prior to the filing of the instant lawsuit that portions of Mr. Jones’ property would be needed by the parish for drainage purposes. In this regard, the record reveals that there were discussions regarding the possibility of the Police Jury purchasing a portion of Mr. Jones’ property. Apparently, Mr. Jones had in the past had negative encounters with the Police Jury about drainage related work being done on his land without his permission and he had instructed the Police Jury to stay off of his land. There is testimony in the record concerning alleged prior 12instances of intrusion onto Mr. Jones’ property for drainage control purposes.
On this particular occasion, employees of the Police Jury entered onto Mr. Jones’ property in order to dredge spoil material from an existing drainage ditch adjacent to a portion of his property. Bo Boyte, the then director of Public Works for Ouachita Parish and Police Jury employee, had received complaints about water backing up in a subdivision near Mr. Jones’ property. Mr. Boyte testified that he dispatched equipment crews with heavy equipment to clear several drainage ditches in the area, one of which lay between Mr. Jones’ property and a levee constructed by the East Town & Country Water District. Mr. Boyte did not consult any other member of the Police Jury, nor the parish manager, before dispatching the crews. In addition, he admitted that he did not obtain permission from Mr. Jones prior to commencing the work on the drainage ditch. Mr. Boyte further admitted that parish workers did enter onto and work from Mr. Jones’ property while cleaning out the ditch.
The overall testimony at trial, however, differed as to whether or not parish equipment was used to deposit spoil and debris onto Mr. Jones’ property, the value of the property taken as a result of the work and the cost to restore the property. Mr. Boyte testified that the only spoil that was placed on Mr. Jones’ property was from the cleaning of the portion of the ditch that was on his property and that no debris or spoil was moved from other areas and deposited onto Mr. Jones’ property. Danny Jones, [3Mr. Jones’ brother, testified to the contrary, stating that he saw the workers digging the ditch with a backhoe and hauling the dirt, mud and debris in a dump truck to Mr. Jones’ property where it was deposited and the mud was spread with a bulldozer.
Mr. Jones maintains that the drainage ditch, which had formed by the release of water at the spillway flowing down the levee, was greatly enlarged by the Police Jury workers, forming a canal that encroached onto his property at both ends of the ditch/canal. Mr. Jones submits that the encroachment is visible on the plats and surveys done by Donald R. Harrison, the Ouachita Parish drainage engineer, and Braswell Surveyors. John W. Bras-well surveyed the area for Mr. Jones and testified that the ditch encroached on Mr. Jones’ property at both ends. He also identified the areas on which he found debris and spoil. Don Harrison surveyed the property for the parish and also identified areas of spoil and debris. In addition to construction debris, however, Mr. Harrison pointed out a sofa and other “domestic ingredient[s]” in the debris, which *1097 led him to conclude that the area may have also been a place where people discarded trash that would not have necessarily come from the drainage ditch excavation. Mr. Harrison did agree, however, that the ditch encroached on Mr. Jones’ property, stating that “the total encroachment of the spoil bank and the portions of the channel itself that are within his property we’re showing to be point four five (.45) acres.” Regarding the area as a whole, Mr. Harrison testified that it was “flood-prone” and that there was a natural drainage route running through the property. Specifically, he provided the court with 14the elevations of different areas of Mr. Jones’ property and concluded that “[p]robably ninety-five percent of it falls in a special flood hazard area.”
Mr. Boyte testified that the parish workers did not enlarge the ditch, but merely cleaned and dredged the existing ditch with a long-arm backhoe. Mr. Boyte admitted that the crew worked from Mr. Jones’ property to clean the ditch, but he also stated that the area in which they were working had apparently been a construction dump site as there was concrete and other such debris present on the property (not only in the ditch) prior to the commencement of the drainage work. In response to questioning concerning a possible purchase of Mr. Jones’ land by the parish, Mr. Boyte testified that he recalled discussing the price of approximately $3,000 per acre if the entire tract was purchased.
Both parties provided expert appraisal testimony at trial concerning the value of Mr. Jones’ land. Graham Gault appraised Mr. Jones’ land on March 23, 2000. He valued the land at $6,972 per acre or $32,000 for the 4.59 acre tract which was affected by the work. Mr. Gault testified that the best use for the land was subdivision into single or multi-family dwellings; however, he admitted that he did not know whether the entire 4.59 acre tract or a portion of the tract was in a flood zone. In this regard, he agreed that being in a flood zone would “make a difference” when examining comparable properties (“compara-bles”) in the appraisal process, i.e., one would want to use comparables that were or were not in a flood zone as the case may be.
| BMr. Gault further agreed that the com-parables he utilized had existing water, sewer, utility and telephone service, whereas Mr. Jones’ tract was vacant and unimproved with no standing timber and no water, sewer, utility, electric or telephone services. Finally, it was noted during Mr. Gault’s testimony that, while there were existing duplexes on property located in the same “flood zone” as Mr. Jones’ property, those areas were in a levee district, i.e., a levee system had been constructed to prevent the property from flooding. No such system was in place on Mr. Jones’ property.
Charles Wilkes provided expert appraisal testimony for the Police Jury. The trial judge stated in reasons for judgment that Mr. Wilkes is very experienced and has personal knowledge of the property as he lives in a nearby area. Mr. Wilkes’ appraisal was done in the spring of 2000 and he valued the property (as of May 1, 2000) at $1,100 per acre for the entire 27-acre tract, with the highest and best use being edge-of-town recreational property, with a possible use as a single-family large acreage homesite built on stilts. He noted that a possible range, depending on use, could be $700 per acre to $1,130 per acre. Adjusting the appraised value based on the size of the tract, Mr. Wilkes valued the .45 acre tract, that was now part of the drainage ditch, at $1,474. In response to questions regarding the value of only the larger 4.59 acre area allegedly affected by the *1098 parish work, Mr. Wilkes appraised it at $1,250 per acre. Mr. Wilkes provided thorough testimony as to his considerations in the appraisal of the property, noting as a critical factor which may preclude development of the property, that ninety percent of the land was in a flood zone which would require flood | ^insurance and a wetlands permit from the Corps of Engineers prior to development. He described the property as flood prone with soil types characteristic of swamp areas. According to Mr. Wilkes, the comparables he utilized in appraising Mr. Jones’ property were also subject to flooding, albeit in varying degrees. Mr. Harrison corroborated this in his testimony as well.
There was also conflicting evidence presented regarding the cleanup of the debris and restoration of the property to its condition prior to the drainage work. Frank Miletello, a heavy equipment contractor who provides dirt moving services, testified on behalf of Mr. Jones. Mr. Miletello testified that Mr. Jones had requested that he do an estimate of the cost of removing the debris and spoil from his property and filling in the drainage ditch. Regarding the latter, Mr. Miletello’s testimony was unclear as to whether he was to bid on completely filling in the entire drainage ditch or just a portion of the ditch. In any event, he admitted that filling in the ditch would impede the water drainage in the area. Mr. Miletello provided an estimate of $45,860 for cleaning up the debris on Mr. Jones’ property and filling in the drainage ditch, which would take from ten days to four weeks to complete. On the other hand, Mr. Boyte testified that, in his opinion, the debris and spoil could be removed and the property restored by the work of three dump trucks over approximately three 10-hour work days (depending on how far the debris was hauled).
In reasons for judgment, the trial court noted that Mr. Jones’ petition sounds in tort, but describes an action in trespass. He alleged that the Police j7Jury sent equipment onto his land without permission, dug a ditch and deposited spoil and other debris, such as stumps and concrete, onto his land, without compensation. As previously stated, Mr. Jones sought damages for mental anguish and inconvenience, attorney fees and damages in the amount of $150,000 for the alleged five acres that were destroyed by the activity of the parish. Alternatively, Mr. Jones sought $45,860 in damages which he claimed would be necessary to restore the property.
Again, it is not disputed that the drainage work at issue was commenced without obtaining Mr. Jones’ permission. Mr. Boyte admitted as much in his testimony. The Police Jury, however, argued to the trial court that the parish only owed Mr. Jones the reasonable fair market value of the part of the property affected by the work done without his permission, subject to a credit for the cost of any work that was done that improved his property or its marketability. As previously stated, finding Mr. Wilkes to be the more credible expert witness, the trial court relied on his testimony in awarding Mr. Jones $1,474 for the .45 acres “taken” by the work done on the drainage ditch and $3,000 representing the cost of cleaning up and restoring the property. This appeal ensued.

DISCUSSION

The monetary awards

Mr. Jones argues that the amounts awarded by the trial court are inadequate. Specifically, he claims that $3,000 is not enough to remove the large amount of spoil and debris on his property and that the trial court erred in accepting Mr. Wilkes’ appraisal figures rather than those *1099 provided by |sMr. Gault. In its thorough and well-written reasons for judgment, the trial court concluded the following regarding these issues:
It is the opinion of this Court that [La. R.S. 38:113 and La. R.S. 33:1236(13)] authorize the Police Jury to enter onto Jones’ land even without his permission in order to do necessary drainage improvement work, including clean-out of natural drains in the area, such as the ditch in question. The Court does not believe that it has been proven by a credible preponderance of the evidence that the Ouachita Parish Police Jury’s employees were responsible for replacement of all of the debris materials shown in Jones’ photographs. It is highly likely that the area in question, having not been effectively fenced off, was used as a dumping ground by trespassers, hunting poachers or other unauthorized persons. The Court specifically finds that the plaintiff has failed to carry its burden of proof of showing that the numerous concrete chunks were placed there by Ouachita Parish Police Jury employees.
Although the evidence is far from conclusive, the Court believes the Police Jury has shown by a preponderance of the evidence that the work done by its employees in cleaning out the drainage ditch abutting Jones’ property resulted in only a small enlargement of the ditch rather than a wholesale widening. As a result, a small portion of Jones’ property was taken by inverse condemnation and the spoil from the clean-out of the ditch area affected an area amounting to approximately .45 acres, which the court values at the amount of $1,474, based upon the appraisal of Mr. Wilkes, which appraisal the Court finds to be much more persuasive than Mr. Gault’s.
Bo Boyte estimated that it would take approximately three 10-hour days for Police Jury employees to remove the spoil material from Jones’ land if Jones would grant them access onto his property. The Court awards the plaintiff an additional $3,000 for the cost of removal of the spoil ... Frank Miletello’s estimate of nearly $46,000 entailed an extensive program of work including filling up the canal ... [which] would doubtless cause a worsening of periodic flood control problems.
This court’s review of the trial court’s finding’s is governed by the manifest error/clearly wrong standard. Stobart v. State of Louisiana, Through Department of Transportation and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, supra; Rosell, supra. Where there are two permissible views of the evidence, the factfin-der’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra.
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell, supra. In summary, where a factfinder’s finding is *1100 based on its decision to credit the testimony of one of two or more witnesses, that finding; can virtually never be manifestly erroneous or clearly wrong. Id.
In the case sub judice, the trial court heard and evaluated conflicting testimony and viewed photographs and documentary evidence on the issues raised by Mr. Jones. First, the record contains conflicting testimony regarding the size of the ditch over the years and the extent of the widening of the ditch by the parish workers. We find a reasonable factual basis for the trial court’s finding that the Police Jury’s work resulted in the “taking” |inof only a small portion of Mr. Jones’ property. Specifically, the parish engineer, Mr. Harrison, testified that .45 acres was the portion of Mr. Jones’ property encroached upon by the spoil bank of the drainage ditch. We find no manifest error in the trial court’s accepting this testimony.
Next, we note that the determination of the amount of compensation owed must be made on the basis of the facts of each case and in accord with the uniqueness of the thing taken. Huckabay v. Red River Waterway Commission, 27,-113 (La.App.2d Cir.10/12/95), 663 So.2d 414, writ denied, 95-3007 (La.3/8/96), 669 So.2d 403. The trial court made a credibility determination which weighed in favor of Mr. Wilkes’ appraisal value of the .45 acres over Mr. Gault’s appraisal value. The record contains evidence that Mr. Wilkes is a very experienced appraiser and lives in the immediate area of the property in question. In addition, there is ample evidence in the record to support Mr. Wilkes’ figures. A credibility call such as this can virtually never be clearly wrong, and we will not disturb the trial court’s finding on appeal. See Rosell, supra.
We reach the same conclusion on the issue of the cost of removal of the spoil. The trial court found persuasive the testimony of several witnesses that the area was more likely than not used as a construction and domestic dumping site prior to the Police Jury’s work on the drainage ditch. Accordingly, the trial court found that not all of the debris shown in photographs of Mr. Jones’ property came from the excavation of the drainage ditch, including the large chunks of concrete. Mr. Jones’ testimony to the contrary presented the trial court with two permissible | T1 views of the evidence and its choice between those views cannot be manifestly erroneous. In addition, conflicting testimony was presented regarding the length of time necessary to remove the spoil and debris and the cost thereof. The choice to accept Mr. Boyte’s opinion as to the steps necessary to restore the property was not manifestly erroneous. Mr. Jones’ assignments of error regarding these issues are without merit.

General damages

Mr. Jones argues that the trial court erred in ruling that La. R.S. 38:113 and La. R.S. 33:1236 authorized the Police Jury to enter onto his land to perform drainage work without his permission. As such, according to Mr. Jones, it was error to refuse to award general damages for mental anguish and inconvenience as a result of the Police Jury’s trespass on his property. We disagree.
La. R.S 38:113 provides, in pertinent part:
The various levee and drainage districts shall have control over all public drainage channels or outfall canals within the limits of their districts which are selected by the district, and for a space of one hundred feet on both sides of the banks of such channels or outfall canals, and one hundred feet continuing outward from the mouth of such channels or out *1101 fall canals, whether the drainage channels or outfall canals have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels or outfall canals, and may adopt rules and regulations for preserving the efficiency of the drainage channels or outfall canals.
La. R.S. 33:1236(13) provides as follows:
To construct and maintain drainage, drainage ditches, and drainage canals; to open any and all drains which they may deem necessary and to do and perform all work in connection therewith; to cut and open new drains, ditches and canals, to acquire lands for necessary public purposes, including rights of hj>way, canals and ditches by expropriation, purchase, prescription or by donation; to enter into contracts for the construction of such drainage works, and to purchase machinery and have the work performed under their own supervision; to allocate, use and expend the general alimony of the parish for any of the above purposes; to incur debt and issue bonds for drainage and drainage canals in the manner provided for by Subtitle II of Title 39; and use such other funds as may be legally expended for such purposes; to levy taxes for the maintenance of said drainage works in the manner provided for and under the authority of Article X, Section 10 of the Constitution of the State of Louisiana, as amended, and to construct any works and do any and all things necessary to effect proper drainage and carry this Paragraph into effect; to enter into contracts or agreements, under such terms and conditions as may be mutually agreeable with the State of Louisiana, through the Department of Public Works for the securing of State aid for the purposes herein authorized; to cooperate and participate in any State or Federal aid program which may now exist or which may hereafter come into effect under any State or Federal law. Police juries shall open all natural drains which they deem necessary in their respective parishes and shall perform all work connected therewith, which they may deem necessary to make the opening of natural drains effective. They may perform all other acts necessary to fully drain all the land in their respective parishes and maintain such drainage ivhen established. This Paragraph is intended to furnish additional means whereby parishes in the State of Louisiana may accomplish the objects and purposes herein referred to, and shall be liberally interpreted. (Emphasis added).
Mr. Harrison testified that there is a natural drain running through Mr. Jones’ property. The above statutes authorized the Police Jury to “open” the natural drain and to perform the work necessary to accomplish this result.[1] We find, as did the trial court, that Mr. Jones is not entitled to damages for trespass, but he is entitled to damages for inverse condemnation.
Assuming, arguendo, that there was a trespass in this case, we agree with the trial court that the case of Williams v. City of Baton Rouge, 98-1981, 98-2024 (La.4/13/99), 731 So.2d 240, on which Mr. Jones relies, is distinguishable from the case sub judice. Williams involved a finding of bad faith on the part of the Police Jury in entering onto the plaintiffs property despite its knowledge that a judge had refused to issue a court order permit *1102 ting the drainage work and two legal ad-visors had advised the city and parish that such a court order was needed. Based on the bad faith conduct of the Police Jury, 'the plaintiff in Williams was awarded actual damages for trespass. Unlike Williams, we find no evidence of bad faith trespassing on the part of the Police Jury in this case. Thus, Mr. Jones is limited to damages for inverse condemnation.
We note, however, that recovery of damages for mental anguish arising from property damage is not limited to cases involving a trespass. In Simmons v. Board of Commissioners of Bossier Levee District, 624 So.2d 935 (La.App. 2d Cir. 1993), this court recognized that
[S]uch damages may be awarded to persons whose property was damaged by intentional or illegal acts, or by acts giving rise to strict or absolute liability, or by acts amounting to a continuing nuisance, or where the property owner was present when or shortly after the damage was negligently inflicted and suffered a psychic trauma similar to a physical injury as a direct result of the incident.
We do not find any of the above circumstances to be present in the case sub judi-ce. While there was testimony in the record concerning prior instances where the parish had sent workers onto Mr. Jones’ land and his expression of disapproval of the same, we do not find that any such activity rises to the 114level that would justify an award for mental anguish. We conclude, therefore, that the trial court was proper in refusing to award general damages to Mr. Jones.

Attorney fees and expert appraisal and survey fees

La. R.S. 13:5111(A) provides as follows:
A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding.
The trial court in the case sub judice did not address Mr. Jones’ request for attorney fees and ordered that each party bear the cost of that party’s expert appraisal fees. Since we have found that a taking occurred, however, we agree with Mr. Jones that the above statute requires the trial court to determine and award reasonable attorney fees “for compensation for the taking of property.”
Mr. Jones contracted to pay attorney fees of one-third of his recovery. While we recognize that a court is not bound to award attorney fees in the percentage stipulated in an attorney-client fee contract, we find that an award for attorney fees of one-third of the total award is reasonable in this case. See Huckabay, supra; Simmons, supra; Naquin v. Dept. of Transportation and Development, 604 So.2d 62 (La.App. 1st Cir.1992), writ denied, 608 So.2d 169 (La.1992). We base the attorney fee award on|1Rthe total amount of the judgment, $4,474, representing the amount of $1,474 awarded as compensation for the taking of .45 acres of Mr. Jones’ property and severance damages of $3,000 for the *1103 cost to cure[2] or restore the property. Simmons, supra. The judgment, therefore, is hereby amended to add an award of attorney fees in the amount of $1,491.33. Likewise, we find that Mr. Jones is entitled to an award of the appraisal fee of $400 and surveyor’s fee of $1,000 incurred by him. The judgment is hereby amended accordingly.

DECREE

For the foregoing reasons, the judgment of the trial court is amended to include an award to Johnny Jones of $1,491.33 for attorney fees and $1,400, representing his expert appraisal and survey fees. As amended, the judgment of the trial court is affirmed. Costs of appeal shall be borne equally by Johnny Jones and the Ouachita Parish Police Jury.
AMENDED AND, AS AMENDED, AFFIRMED.

. We agree with Mr. Jones, however, that the above statutes do not authorize the dumping of spoil and debris onto a private landowner's property, damages for which Mr. Jones is compensated by the trial court’s judgment.

. See State Through the Dept. of Highways v. Bray, 511 So.2d 1300 (La.App. 2d Cir. 1987), writ denied, 515 So.2d 446 (La.1987); State Through DOTD v. Manuel, 93-269 (La.App. 3d Cir.2/9/94), 640 So.2d 299, writ denied, 94-0542 (La.4/29/94), 641 So.2d 203, citing Mathis v. City of DeRidder, 599 So.2d 378 (La.App. 3d Cir.1992)(severance damages may be determined by a “cost to cure” approach meaning that the owner is allowed to recover the cost of correcting or curing the damage done to the remaining property).