Judgment rendered May 5, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,821-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

GLENDA EMMONS AYCOCK                    Plaintiff-Appellant

versus

BOARD OF COMMISSIONERS               Defendant-Appellees
OF THE BOSSIER LEVEE
DISTRICT AND CITY OF
BOSSIER CITY

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 140,852

Honorable Ford E. Stinson Jr. (*Pro Tempore*), Judge

* * * * *

THE TOUCHSTONE LAW FIRM                Counsel for Appellant
By: David Mark Touchstone
    Dylan David Touchstone

COOK, YANCEY, KING & GALLOWAY          Counsel for Appellees
By: Robert Kennedy, Jr.
    James Ashby Davis

* * * * *

Before MOORE, ROBINSON, and BLEICH (*Pro Tempore*), JJ.

**MOORE, C.J.**

Aubrey R. Aycock, executor of the estate of his late wife, Glenda Emmons Aycock, appeals a judgment that sustained, after a trial on the merits, the City of Bossier City's exception of prescription and dismissed Ms. Aycock's claim of inverse condemnation. The City has filed an exception of no right of action seeking to dismiss the appeal. For the reasons expressed, we overrule the exception and affirm the judgment.

## FACTUAL BACKGROUND

Ms. Aycock, a real estate agent, owned a house on Lot 14-C, Village Square West Phase 2-C, a subdivision in Bossier City. The lot is adjacent to a drainage ditch (sometimes called the Loreco Ditch); across the ditch lies Rusheon Elementary School. A timber-and-railroad tie retaining wall, apparently installed by the developer of the subdivision in the early 1980s, originally stood next to the ditch.

In February 2009, the treasurer of the Village Square West Phase 2 Home Owners Association wrote to Mark Hudson, the city engineer, to advise that the retaining wall was near collapse, which would result in serious damage to all houses in the subdivision. He reminded Hudson that the City had previously replaced a similar wall in Village Square West Phase 1. Hudson brought the matter to the City Council, which adopted an ordinance to allocate $230,000 to replace a section of the Village Square West Phase 2 retaining wall adjacent to the ditch. In May, the City delivered to each Phase 2 homeowner a document, "Indemnification / Retaining Wall Improvements / Village Square West." Ms. Aycock signed this agreement, on May 5, 2009, on behalf of her mother, who owned the lot at the time.

The City placed the project out for bid; the winning bidder was Integrity Inc.; the City signed the contract and issued a notice to proceed on July 31, 2009. Integrity completed the work on September 8, 2009; Hudson, the city engineer, signed a certificate of substantial completion that day.

Ms. Aycock testified that because she had to put her mother in a nursing home (she passed away in 2010), the house on Lot 14-C sat vacant from March 2009 until May 2012. At that point, she started leasing the house intermittently. However, a tenant advised her that the in-ground sprinkler system was not working properly. Ms. Aycock inspected and found, in addition to a buried sprinkler pipe that was now above ground, cracks in the ceiling and foundation that could not be repaired. She then learned about the City's prior work replacing the retaining wall.

## PROCEDURAL HISTORY

Ms. Aycock filed this petition on January 22, 2013, alleging inverse condemnation in that the City's changes to the retaining wall caused erosion, poor drainage, and instability of the soil, leading to a "taking" of her property, under La. Const. art. I, § 4(B). She alleged that she did not discover the taking until May 2012, when the tenant reported the problem with the sprinkler system. In her petition, she demanded the full value of the house and property, with general damages. By pretrial memos, she also demanded attorney fees and argued that her action for "compensation for property taken" prescribed *three years* after the taking, under La. R.S. 13:5111 A.[1]

---

[1] The petition also named the Board of Commissioners of the Bossier Levee District as a defendant, but the Board was dismissed by unopposed motion for summary judgment early in the proceedings.

The City initially moved for summary judgment on the basis of the indemnification agreement, discretionary immunity, and the prescription of *two years*, running from "the completion and acceptance of the public works" "when private property is damaged for public purposes." La. R.S. 9:5624. The court denied summary judgment, finding genuine issues of material fact.

In August 2019, days before trial was to begin, the City filed this exception of prescription, reiterating the two-year limit of R.S. 9:5624. It showed that the certificate of substantial completion was signed on September 8, 2009, but suit was not filed until January 22, 2013.

## SUMMARY OF TRIAL EVIDENCE

The matter proceeded to bench trial over four days, in August 2019. Ms. Aycock testified to the facts described above. She admitted that the City never acquired any part of her lot, but she felt that the foundation issues would make the house lose 30-40% of its value. Mr. Aycock, who manages rental properties for his wife, corroborated her testimony and individually identified 121 photos he took of the house and yard.

Ms. Aycock called David Pattridge, who qualified as an expert in post-tension foundations, foundation evaluations, soil-slab interactions, and remediation of foundations. He felt that the sheet pile wall installed by the City in 2009 projected above the grade, creating a dam that would not let water return to the ditch; the resulting poor drainage was the source of Ms. Aycock's foundation problems. He proposed remediation by raising the soil level on the east side of the wall, and by repairing the catch basin in the street. He also individually identified 100 photos he took of the house and yard.

Ms. Aycock also called Roy D. Jones, a retired civil engineer, who qualified as an expert in geotechnical engineering and investigation of soil and drainage issues and structural failures. He agreed that the problem was not from groundwater, but from "perched" water, which was trapped in the lot by the retaining wall.

Finally, Ms. Aycock called Clint Land, a real estate appraiser, who estimated the house was worth from $190,000, in its current condition, to $210,000, in good condition.

By posttrial memo, Ms. Aycock figured her damages at $343,482.49.

The City called its engineer, Hudson, who testified that even though the City did not own the original retaining wall, it felt a responsibility to help the homeowners next to the ditch. He explained that the indemnification agreement was chiefly to protect the City from complaints of inconvenience during the construction process, but also to advise homeowners that the City would not own the finished wall. He was emphatic that the City never appropriated, or made any ownership claim over, any part of Lot 14-C.

The City also called Paul Cormier, a professional engineer, who testified that there were many sources of Ms. Aycock's foundation problems: small soffits and lack of gutters on the house, the sprinkler system, and a poorly functioning drain near the street. By contrast, he felt that the sheet pile retaining wall was installed properly.

By posttrial memo, the City argued lack of causation, damages, the effect of the indemnification agreement, and, crucially, the two-year limit of R.S. 9:5624.

## ACTION OF THE DISTRICT COURT

The district court wrote an eight-page opinion recognizing that Ms. Aycock's property had been taken or damaged for a public purpose, under La. Const. art. I, § 4(B), but found that which one of these disjunctive options occurred was crucial. An action for a *taking* prescribed in three years from the taking, La. R.S. 13:5111 A, while an action for a *damaging* prescribed in only two years from the acceptance of the public work, La. R.S. 9:5624.

After reviewing the jurisprudence, the court rejected the notion that *any* substantial interference with the free use and enjoyment of property was automatically a *taking*. Instead, it adopted the gradation between damaging (less severe) and taking (more severe) recognized in *Avenal v. State*, 03-3521 (La. 10/1/04), 886 So. 2d 1085, 34 Envtl. L. Rep. 20,122, *cert. denied*, 544 U.S. 1049, 125 S. Ct. 2305 (2005), and *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459 (La. 4/12/05), 907 So. 2d 37. The court implicitly found only a damaging, applied the two-year period of R.S. 9:5624, and ruled that Ms. Aycock's claim had prescribed. The court rendered judgment dismissing her claim.

Ms. Aycock appealed, raising two assignments of error. However, she passed away in February 2021, and the City filed an exception of no right of action on grounds that her husband had not yet been appointed executor of her estate. After Mr. Aycock submitted proof of his appointment, the City filed a second exception, this time urging that the proper appellants were the successors defined in La. C.C. art. 2315.1 A(1), her surviving spouse *and children.* This court referred the exception to the merits.

5

## DISCUSSION

### *No Right of Action*

By its second exception of no right of action, the City urges that when a party dies during the pendency of an action, his "legal successor" is the proper party to pursue the claim, and that La. C.C.P. art. 801 defines "legal successor" as the survivors designated in La. C.C. art. 2315.1. The City contends that Ms. Aycock's cause of action survived in favor of the "surviving spouse and child or children of the deceased," La. C.C. art. 2315.1 A(1), and that Mr. Aycock, as executor of the estate, does not meet these criteria.

An action can be brought only by a person having a real and actual interest which he or she asserts. La. C.C.P. art. 681. The function of an exception of no right of action is to determine whether a plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. *Miller v. Thibeaux*, 14-1107 (La. 1/28/15), 159 So. 3d 426; *Myles v. Howell*, 52,460 (La. App. 2 Cir. 1/16/19), 265 So. 3d 22. Any judgment rendered for or against a deceased person is an absolute nullity. *Cortes v. Fleming*, 307 So. 2d 611, 81 A.L.R. 3d 267 (La. 1974); *Kemper v. Don Coleman, Jr., Bldr. Inc.*, 31,576 (La. App. 2 Cir. 7/29/99), 746 So. 2d 11, *writs denied*, 99-2954, 2955 (La. 1/7/00), 752 So. 2d 861.

The Code of Civil Procedure provides for the substitution of deceased parties. Article 801 states:

> When a party dies during the pendency of an action which is not extinguished by his death, his legal successor may have himself substituted for the deceased party, on ex parte written motion supported by proof of his quality.
> As used in Articles 801 through 804, "legal successor" means:

6

(1) The survivors designated in Article 2315.1 of the Civil Code, if the action survives in their favor; and
(2) Otherwise, it means the succession representative of the deceased appointed by a court of this state, if the succession is under administration therein; or the heirs and legatees of the deceased, if the deceased's succession is not under administration therein.

The statute referenced, La. C.C. art. 2315.1, states (in pertinent part, with *emphasis added*):

A. If a person who has been injured by an offense or quasi offense dies, *the right to recover all damages* for injury to that person, his property or otherwise, *caused by the offense or quasi offense,* shall survive for a period of one year from the death of the deceased in favor of:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.

Plain reading discloses that the provisions for the survival action apply only when the damages were caused by the offense or quasi offense. As noted by Prof. H. Alston Johnson, "It seems difficult to avoid the inference * * * that the right to recover damages to the property of the victim, unlike the right to recover damages for personal injury, [have] become a matter of general succession law rather than tort law." H. Alston Johnson, Testamentary Dispositions, 57 La. L. Rev. 181, 195 (1996).

There is no suggestion, and no evidence, that the alleged inverse condemnation of Ms. Aycock's property resulted in her injury and death. On this record, the legal successor is the succession representative, La. C.C.P. art. 801 (2). Mr. Aycock supplied proof that he has been duly appointed the executor of his late wife's estate and is the proper party to proceed with the appeal. The exception of no right of action is overruled.

7

***Damaging vs. Taking***

By her first assignment of error, Ms. Aycock urges that the court erred in finding that her claim was for a "damaging" rather than a "taking" and in applying R.S. 9:5624 to find that the claim had prescribed. She shows that just compensation is due whenever property is "taken or damaged," La. Const. art. I, § 4(B), and cites the three-part test for inverse condemnation outlined in *State v. Chambers Inv. Co.*, 595 So. 2d 598 (La. 1992).[2] She concedes that R.S. 13:5111 and 9:5624 provide different prescriptive periods, but argues that she proved a *taking*, for all purposes. She contends that her case is directly on point with *Simmons v. Board of Comm'rs*, 624 So. 2d 935 (La. App. 2 Cir. 1993), in which this court affirmed the finding of a taking, when dredging a canal led to crevices, loss of soil and trees, and damages to nearby foundations. She contends that the Supreme Court confirmed *Simmons* by citing it with approval in *Suire v. Lafayette Parish*, *supra*, and that other ditch-related cases have also resulted in findings of takings. *Mitter v. St. John the Baptist Parish*, 05-375 (La. App. 5 Cir. 12/27/05), 920 So. 2d 263, *writ denied*, 06-0254 (La. 5/26/06), 930 So. 2d 21; *Jones v. Ouachita Parish Police Jury*, 36,552 (La. App. 2 Cir. 12/11/02), 833 So. 2d 1094, *writ denied*, 03-0082 (La. 3/21/03), 840 So. 2d 553; *Lowenburg v. Sewerage & Water Bd. of New Orleans*, 2019-0524 (La. App. 4 Cir. 7/29/20), __ So. 3d __. Finally, she disputes the district court's treatment of *Avenal v. State*, *supra*, in that the damaged property there,

---

[2] Under this test, the court must (1) "identify a recognized species of private property right that has been affected," (2) "decide whether the property, either a right or a thing, has been taken or damaged, in a constitutional sense," and (3) decide "whether the taking or damaging is for a public purpose."

8

oyster beds, were only *leased* to the plaintiffs; they were owned by the state, and the state could not appropriate anything from itself.

"Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit." La. Const. art. I, § 4(B). Although the Constitution requires just compensation when property is taken or damaged, the law distinguishes these actions by fixing different time limits for them. "Actions for compensation for property *taken* by the state [or] a parish * * * shall prescribe three years from the date of such taking." La. R.S. 13:5111 A (emphasis added). "When private property is *damaged* for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run after the completion and acceptance of the public works." La. R.S. 9:5624 (emphasis added). In a case such as this one, it is critical to distinguish between taking and damaging.

In *Avenal v. State*, *supra*, the Supreme Court confirmed that property is *taken* when the public authority "acquires the right of ownership or one of its recognized dismemberments"; it is considered *damaged* when the action of the public authority "results in the diminution of the value of the property." *Id.* at 29, 886 So. 2d at 1105; *Soma Enters. Inc. v. State*, 521 So. 2d 829 (La. App. 2 Cir.), *writ denied*, 522 So. 2d 572 (1988).

The trial court's factual findings in an inverse condemnation case are subject to manifest error review. *Crooks v. Department of Natural Res.*, 19-0160 (La. 1/29/20), __ So. 3d __; *Huckabay v. Red River Waterway Comm'n*, 27,113 (La. App. 2 Cir. 10/12/95), 663 So. 2d 414, *writ denied*, 95-3007 (La. 3/8/96), 669 So. 2d 403.

9

We have closely examined the evidence and note the opinion of Ms. Aycock's civil engineer, Jones, who stated that she had "lost" a substantial amount of her yard. However, her real estate appraiser, Land, testified that the house would be worth $210,000 in good condition, and $20,000 less "as is." Ms. Aycock, herself a real estate agent, felt the house had lost 30-40% of its value. This is easily a "diminution of the value of the property," and thus a damaging, as opposed to a taking of the lot (or of $20,000 worth of it).

Like Jones, Ms. Aycock's foundations expert, Pattridge, proposed remediations to shore up the soil and allow water to flow over the retaining wall; such efforts would not be consistent with a view that the property was taken. The city engineer, Hudson, testified without contradiction that the City never appropriated, or made any ownership claim over, any part of Ms. Aycock's lot. On this record, the district court was not plainly wrong in its implicit finding that what happened was a damaging, rather than a taking, of property.

The jurisprudence cited by Ms. Aycock presents much more extreme situations. In *Simmons v. Board of Comm'rs*, *supra*, the levee board's dredging caused the bank to "crack and slough or drop off," with the loss of between 7 and 8.75 acres; vertical drop-offs of 8-10 feet; the loss of 25 to 150 trees per lot; and extensive structural damage to homes. In *Mitter v. St. John the Baptist Parish*, *supra*, the parish's work resulted in 20% of the plaintiff's property being submerged by outflow from a drainage culvert, resulting in stagnation and insect infestation. In *Jones v. Ouachita Parish*, *supra*, the expansion of a ditch left 0.45 acres of the plaintiff's land covered with spoil and other debris, making it unusable. The instant record falls far short of the vanished acreage proved in these cases. In *Lowenburg v.*

10

*Sewerage & Water Bd.*, *supra*, the alleged damage, in uptown New Orleans, was excessive vibrations and noise, with dust, dirt, and debris over a 3½-year period; the court affirmed awards for inconvenience but did not specify whether it found a taking or a damaging. Notably, none of these cases discussed whether the government's action was a taking, or merely a damaging. These cases do not compel a finding of a full taking.

In short, the district court was not plainly wrong in finding a damaging, rather than a full taking, and not legally wrong in applying the two-year period of La. R.S. 9:5624 to the claim. This assignment of error lacks merit.

### Suspension of Prescription

By her second assignment of error, Ms. Aycock urges the court erred in failing to apply the equitable doctrine of contra non valentem to allow her to proceed with her claim. If the two-year period of R.S. 9:5624 must apply, she contends she was not aware of any problem until May 2012, and she filed suit in January 2013, making her claim timely. Citing the seminal cases of *Corsey v. State*, 375 So. 2d 1319 (La. 1979), and *Renfroe v. State*, 01-1646 (La. 2/26/02), 809 So. 2d 947, she argues that prescription is suspended if "the cause of action is neither known nor reasonably knowable by the plaintiff, even though plaintiff's ignorance is not induced by the defendant." She submits that one court has applied contra non to R.S. 9:5624, *Miley v. Consol. Gravity Drainage Dist. No. 1*, 93-1321 (La. App. 1 Cir. 9/12/94), 642 So. 2d 693, and submits that the "lulling" found in *Miley* is similar to her situation of not occupying the property when the damage occurred. Finally, she submits that R.S. 9:5624 is not a peremptive statute, as it uses the words "prescribed" and "prescription," and courts always

11

interpret dubious statutes to maintain rather than bar actions, *Taylor v. Liberty Mutual Ins. Co.*, 579 So. 2d 443 (La. 1991).

The City responds that the two-year period of R.S. 9:5624 is, in fact, peremptive, based on the analogous phrasing of La. R.S. 38:2189, which has been found to be peremptive, *State v. McInnis Bros. Constr.*, 97-0742 (La. 10/21/97), 701 So. 2d 937.[3]  The City further shows that two courts have implicitly treated § 5624 as peremptive, without much discussion. *Lyman v. Town of Sunset*, 500 So. 2d 390 (La. 1987); *Nuckolls v. State*, 337 So. 2d 313 (La. App. 2 Cir. 1976).  The City concludes that Ms. Aycock's suit was filed over two years after the work was accepted and, thus, is too late.

This court acknowledges the City's argument that R.S. 9:5624 is peremptive, and finds that one court has so held, *Wilson v. Dept. of Transp. & Dev.*, 98-1142 (La. App. 4 Cir. 4/14/99), 737 So. 2d 866, *writ denied*, 99-2625 (La. 12/17/99), 752 So. 2d 165.  We recognize, however, more recent jurisprudence interpreting statutes that use the word "prescription" as prescriptive, not peremptive. *Borel v. Young*, 07-0419 (La. 11/27/07), 989 So. 2d 42; *Watkins v. Exxon Mobil Corp.*, 13-1545 (La. 5/7/14), 145 So. 3d 237; *MR Pittman Group LLC v. Plaquemines Parish Gov't*, 2015-0396 (La. App. 4 Cir. 12/2/15), 182 So. 3d 291.  We pretermit resolving the issue because even if R.S. 9:5624 is prescriptive, we find that Ms. Aycock's action prescribed.

Prescription runs against all persons unless exception is established by legislation.  La. C.C. art. 3467.  Nevertheless, Louisiana courts have applied

---

[3] This section states, "Any action against the contractor on the contract or on the bond * * * shall prescribe 5 years from the substantial completion * * * or acceptance of such work, whichever occurs first, or the notice of default of the contractor[.]"

12

the jurisprudential doctrine of contra non valentem to suspend the running of prescription in four factual situations. *Corsey v. State*, *supra*; *Marin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10), 48 So. 3d 234, 177 Oil & Gas Rep. 453. Of relevance to this case is Category 4:

> Where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

*Marin v. Exxon Mobil Corp.*, *supra* at 12, 48 So. 3d at 245.

The Supreme Court has cautioned that lower courts apply Category 4 of contra non too broadly; it is meant for "exceptional circumstances." *Id.*; *Renfroe v. State*, *supra*. It will not save the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; a plaintiff is deemed to know what he could by reasonable diligence have learned. *Marin v. Exxon Mobil Corp.*, *supra* at 13, 48 So. 3d at 246, and citations therein.

Ms. Aycock testified that she was a real estate agent; she helped her mother buy Lot 14-C, in 2005, and then helped her design and build the house; the mother moved into it in 2006. By March 2009, however, Ms. Aycock had to place her mother in the Alzheimer's unit at The Glen, and the house sat vacant until May 2012, when she leased it. That month, the tenant advised that the sprinkler system was not working; Mr. Aycock promptly went to the property and saw the white pipe protruding from the ground; Ms. Aycock visited soon after that and discovered the cracked foundation, walls, and window frames.

Contra non will apply if the property damage was "neither known nor reasonably knowable" within two years after September 8, 2009. The damage described, and documented by the numerous photos, is readily

apparent. We recognize the disruption of life when Ms. Aycock had to place her mother in a facility and, about a year later, arrange her funeral. The question is whether Ms. Aycock's decision to leave the house vacant for over three years, and not inspect it periodically, especially before renting to a tenant, was reasonably diligent. Considering that she was a real estate agent and had taken a close interest in the design and building of the house, this conduct is more consistent with willfulness or neglect. Although the district court did not make an explicit finding as to contra non, the record supports its implicit decision to deny the application of the doctrine.

The district court did not abuse its discretion in declining to apply contra non valentem to suspend the two-year limitation of R.S. 9:5624. The second assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, the exception of no right of action is overruled. In all other respects, the judgment is affirmed, with costs to be paid by Aubrey R. Aycock, executor of the estate of Glenda Emmons Aycock.

**EXCEPTION OVERRULED; JUDGMENT AFFIRMED**.

14